Madhuri Trivedi,
ATTN: Women Who Code
44 Tehama St, 5th Floor, San Francisco, CA 94105
Fax: 708-778-4859 Phone: (650) 242-5135
Email: orangeinc@protonmail.com

Case: 1:19−cv−01479 JURY DEMAND
Assigned To : Kelly, Timothy J.
Assign. Date : 5/21/2019
Description: Pro Se General Civil (F-Deck)

# U.S. DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Madhuri Trivedi**<br><br><br>Plaintiff,<br><br>v.<br><br><br>**General Electric Company**<br>Address: General Electric Company<br>41 Farnsworth Street<br>Boston, MA 02210,<br>**Larry Culp, CEO of GE in his individual and official capacity,**<br>Address: General Electric Company<br>41 Farnsworth Street<br>Boston, MA 02210<br>**GE board of directors**<br>Address: General Electric Company<br>41 Farnsworth Street<br>Boston, MA 02210<br><br>Defendants. | Case No.:<br>**COMPLAINT**<br>Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h); SEC Rule17 CFR § 240.21F-2<br><br>Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5<br><br>Violation of Dodd Frank act - Section 1057, Consumer Financial Protection Act (CFPA) , 12 U.S.C. 5567 employee protection<br><br>Wrongful termination in violation of public policy<br><br>Breach of contract good faith<br><br>Violations of whistleblower protections under Sarbanes-Oxley Act ,8 U.S.C. §§ 1514A, et seq. ,Pub. L. 107-204<br><br>8 U.S.C.§ 1324b(a)(1),8U.S.C.§1324b (a)(5)Prohibition Of Intimidation Or Retaliation<br><br>Disparate treatment and retaliation in violation of Title VII<br><br>45 CFR § 160.316 Refraining from intimidation or retaliation, Public Law 104-191.<br><br>45 CFR § 164.530(g) standard: |

Page - **1** -of **103** COMPLAINT                    Madhuri Trivedi

RECEIVED
MAY 2 1 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| 1 | refraining from intimidating or retaliatory acts |
| 2 | National Defense Authorization Act - |
| 3 | NDDA, 10 U.S.C. §2409  Subpart 203.9 |
| 4 | Breach of the implied covenant of good |
| 5 | faith and fair dealing |
| 6 | Jury trial demanded. |
| 7 | Judge: |
| 8 | Date Action filed: |

9

10  Plaintiff Madhuri Trivedi("Plaintiff"), for causes of action against defendants **General**

11  **Electric,GE Healthcare, Larry Culp, GE board of directors** in this Complaint for Damages

12  ("Complaint") as follows:

13      1.  Plaintiff  Madhuri who didn't work for the government nor had union protections,

14

15  blowing whistle given that HER H1B and whole greencard in GE's hand and anything would

16  jeopardize and destroy her immigration; and could impact her career;  ===with all this

17  consequences She boldly and courageously STOOD up for doing what she believed was legal for

18  her to do , not to join GE fraud scheme, cyber security vulnerabilities , product defects,

19  violations ---TOOK high risk road and suffered backslash, retaliation.

20      2.  Trivedi's position is corroborated by Scott Erven, an independent cybersecurity

21

22  Researcher. Finally GE and Department of homeland security(DHS) issued ICERT ALERT in

23  February/March 2018(EXHIBIT 1) for cybersecurity vulnerabilities related to many types of GE

24  medical devices worldwide. Following GE devices were affected.

25

26

27

28

**AFFECTED PRODUCTS**

The following GE Healthcare products are affected:

- Optima 520, which are medical imaging systems, all versions,
- Optima 540, which are medical imaging systems, all versions,
- Optima 640, which are medical imaging systems, all versions,
- Optima 680, which are medical imaging systems, all versions,
- Discovery NM530c, which is a nuclear medical imaging system, versions prior to Version 1.003,
- Discovery NM750b, which is a dedicated breast imaging system, versions prior to Version 2.003,
- Discovery XR656 and Discovery XR656 Plus, which are digital radiographic imaging systems, all versions,
- Revolution XQ/i, which is a medical imaging system, all versions,
- THUNIS-800+, which is a stationary diagnostic radiographic and fluoroscopic X-ray system, all versions,

- Centricity PACS Server, which is used to support a medical imaging archiving and communication system, all versions,
- Centricity PACS RA1000, which is used for diagnostic image analysis, all versions,
- Centricity PACS-IW, which is an integrated web-based system for medical imaging, all versions including Version 3.7.3.7 and Version 3.7.3.8,
- Centricity DMS, which is a data management software, all versions,
- Discovery VH / Millenium VG, which are nuclear medical imaging systems, all versions,
- eNTEGRA 2.0/2.5 Processing and Review Workstation, which is a nuclear medicine workstation for displaying, archiving, and communicating medical imaging, all versions,
- CADstream, which is a medical imaging software, all versions,
- Optima MR360, which is a medical imaging system, all versions,
- GEMNet License server (EchoServer), all versions,
- Image Vault 3.x medical imaging software, all versions,
- Infinia / Infinia with Hawkeye 4 / 1, which are medical imaging systems, all versions,
- Millenium MG / Millenium NC / Millenium MyoSIGHT, which are nuclear medical imaging systems, all versions,

- Precision MP/i, which is a medical imaging system, all versions, and
- Xeleris 1.0 / 1.1 / 2.1 / 3.0 / 3.1, which are medical imaging workstations, all versions.

**IMPACT**

Successful exploitation of this vulnerability may allow a remote attacker to bypass authentication and gain access to the affected devices.

Impact to individual organizations depends on many factors that are unique to each organization. NCCIC recommends that organizations evaluate the impact of this vulnerability based on their operational environment and specific clinical usage.

••••••••••••••••••••••••••••••••••••••••••••••••••••••••

For the affected products, a CVSS v3 base score of 9.8 has been calculated; the CVSS vector string is (AV:N/AC:L/PR:N/UI:N/S:U/C:H/I:H/A:H)

**VULNERABILITY DETAILS**

**EXPLOITABILITY**

This vulnerability could be exploited remotely.

**EXISTENCE OF EXPLOIT**

Vulnerability information about the affected products is publicly available.

**DIFFICULTY**

An attacker with a low skill level would be able to exploit this vulnerability.

3. *Scott Erven reported these cyber vulnerabilities to GE in 2014.*

4. Plaintiff Trivedi started bringing up severity and sense of urgency/liability/ to fix address/stop integrating and shipping medical devices with InsiteEXC to GE from 2011.

5. *Insider threat mitigation didn't exist..as Bill Baribux –GE architect testified (EXHIBIT 3) InsiteEXC failed all security tests on day ONE in year 2008 ;so they moved it from public facing to inside GE network but GE has 300,000 employees and as Scott Erven proved that InsiteEXC was vulnerable from hospital/outside GE network as well.*

6. From my phone conversation with Scott on Feb 22nd 2019 he was also wondering

1    that how come GE not address it/(no fix, patch or recall) despite having lots of press around it for

2    4 years and many security researchers knew about it and wrote. After Scottt report in 2014 ;

3    vulnerabilities were unpatched even though it was wide open to be hacked and manipulated

4
       7.   (Somehow all of a sudden GE released a patch in Feb/March 2018.)
5
6      8.   This is just a tip of an icerburg –vulnerability Scott reported ;was few of 465 total

7           critical defects.

8      9.   GE knowingly conspired, deceived, fraudulently sold medical device products and
9
     services to customers, investors and government by not publicly disclosing defects, cybersecurity
10
     vulnerabilities, also serious hackable –for years for sake of generating revenue, money while
11
12   putting public health and safety at risk and mercy/hands of hackers. GE made numerous press

13   releases, released you tube video, product brochures for surgery, ultrasound and all kind of

14   medical devices with misleading, false information.

15     10. The company's "scheme to defraud its customers by knowingly selling defective
16
     and potentially dangerous remote control product on most of all their medical devices". GE
17
     fraudulently induced the federal government (including the Department of Defense and Veterans
18
19   Administration) , state governments to buy its defective product through both misstatements and

20   material omissions. Each of us has the right to expect any medical equipment used for our

21   medical care to be safe and effective, but we are all placed at great risk when medical equipment
22
     companies violate our trust and knowingly sell equipment that is defective," the evidence shows
23
24   GE's callous disregard for the fact that these defective product(s)—which they consciously,

25   aggressively sold after knowing existence defects—could mean life or death for unsuspecting

26   patients, loss/theft of their protected health information(PHI), wrong diagnosis of life threatening

27   disease or not having timely diagnosis due to cyber security vulnerabilities/defects. This case is

28
     Page - 5 -of 103 COMPLAINT                                    Madhuri Trivedi

not just about recouping money for taxpayers—**it is an indictment of a company that placed a higher premium on profits than public health and safety."- Public policy violation as well.**

    11. <u>On the day Trivedi was terminated by GE, GE architect Bill Barbiuax told Trivedi that "you did the RIGHT thing, but GE is BIG. Nothing will happen to GE.</u>

## THE PARTIES

    12. Madhuri Trivedi is a plaintiff. Madhuri is a citizen of India.

Plaintiff Trivedi came to USA on Spouse H4B visa in 2003, because of domestic violence and other abuse from her Ex-husband she got divorced in 2006;after divorce that was on Student Visa-F1 and then on H1 B visa.

    13. Madhuri worked for GE in Boston, MA and Waukesha, Wisconsin.

Defendant General Electric is a corporation incorporated in New York, currently Headquartered in Boston and during Plaintiff's employment was HQ in Connecticut and GE is a multinational corporation.

    14. In January 03 and Jan 05,2019 I contacted GE ,CEO- Larry Culp and GE board of Directors and sent them EXHIBIT 2

But they didn't reply.

    15. Larry Culp has all the details as I sent in January 03 and Jan 05, 2019 but he has IGNORED email and this matter;otherwise he could have settled this matter and done JUSTICE; but didn't even care to RESPOND. He is here as a defendant in his individual and official capacity.

    16. I sent email to former CEO Jeff Immelt in 2013 and 2014.

    17. I sent /emailed EXHIBIT 2 to John Flannery in 2017. I also called John Flannery

Madhuri Trivedi

assistant and she acknowledged that Mr. Flannery has my email and have read it.

18. Mike Swinford, former CEO of GEHC services knew this matter even before I was illegally terminated.. Mr. Swinford and GEHC CTO Mike Harsh even came to my arbitration hearing. (EXHIBIT 24)

19. **GE boards of directors are body governing public company are hence they are defendants.** Including but not limited to SEC. 101<15 USC 7211>Establishment; Administrative Provisions.(c)Duties of the Board

I emailed them EXHIBIT 2 at directors@corporate.ge.com in 2016-2017 as well.

20. I contacted them multiple occasions since I was illegally terminated.

21. Robert Swireinga, Susan Hockfield knew this matter from 2013-2014.

✓ I contacted Susan Hockfield via emails that I sent her to her MIT email address and her assistant acknowledged she read and after responded mentioning that "she is too high as a director to get involved in an individual matter of mine ";

✓ Even though I was MIT alum and she was MIT president. But she chose not to take any action and didn't fulfill her fiduciary and other duty obligation.

✓ Robert and Susan are no longer board of directors.

✓ Robert did inquiry(EXHIBIT 3) and GE stonewalled ,didn't do anything an on top of that GE complained to arbitrator that I have contracted GE board of director and arbitrator became more hostile after learning this.

## VENUE

22. 28 U.S.C § 1391 venue is proper since GE has office(s), reside and have operations in this district.

## JURISDICTION

23. This court has jurisdiction over plaintiff's claims pursuant to Whistleblower Retaliation under Dodd-Frank Act 15 U.S.C. §78u-6(h)(B)(i)-An individual who alleges discharge or other discrimination in violation of subparagraph (A) may bring an action under this subsection in the appropriate district court of the United States for the relief provided in subparagraph (C). As per 15 U.S.C. §78u-6(h)(1)(B) (iii) ;within 6 years after the date on which the violation of subparagraph (A) occurred. GE can't force mandatory arbitration agreement under this/whistleblower provisions. Plaintiff was terminated on May 31, 2013. Plaintiff has bought these claims within six years after the date on which violations occurred. Therefore, this court has original Jurisdiction of this matter

24. This court has jurisdiction over Securities Exchange Act of 1934,15 U.S.C. 78j(b), and Rule 17 C.F.R. 240.10b-5

25. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question statue), 28 U.S.C. § 1343

26. This Court has jurisdiction over plaintiff's claims pursuant to 45 CFR § 160.316 Refraining from intimidation or retaliation, Public Law 104-191.

27. This case arises, in part, under federal statutes including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000C, et. seq. Therefore this court has original jurisdiction.

28. 8 U.S.C.§ 1324b(a)(1),8U.S.C.§1324b (a)(5); federal statutes hence this court has original jurisdiction for claims brought under these statutes.

29. This court has jurisdiction over claims pursuant to *10 U.S.C. 240. 10 U.S.C. 2409*

30. This court has jurisdiction pursuant to Sarbanes-Oxley Act, PUBLIC LAW 107–204.

31. As per *29 CFR § 1980.103 (c)Place of filing. The complaint should be filed with the OSHA office responsible for enforcement activities in the geographical area where the* <u>*employee*</u> *resides or was employed, but may be filed with any OSHA officer or* <u>*employee*</u>*. Addresses and telephone numbers for these officials are set forth in local directories and at the following Internet address: http://www.osha.gov.* **As Plaintiff filed OSHA department of labor complaint in Timely manner with Wisconsin-Chicago regional offic**e via fax on May 3rd, 2014(EXHIBIT 6, EXHIBIT 7).. OSHA erroneously responded on July 14, 2014 that it doesn't fit any of their 22 statutes. (EXHIBIT 8).

32. Court has supplemental jurisdiction for claims arising out of related this matter.

33. Google **ended arbitration requirement for ALL of the employee disputes/claims.** Earlier google allowed only sexual harassment claims to be taken to court but then Google changed. Goal of arbitration was to have resolution of disputes in alternate way and have access but then has become one of the tool for employers to get away with illegal, wrongdoing, misconduct, violations. Arbitration is systemically designed for employers and not for employees; also arbitrator gets PAID by an Employer (in my case GE paid arbitrator $40,000. So it is a BUSINESS for arbitrator and American arbitration association. )Big corporations have a way to get away in such private environment. Employer especially company like GE can SPEND INFINITE/ENDLESS TIME, RESOURCES and MONEY on LITIGATION/Legal fight (any such activities)which employees can't even imagine to afford to. In end result it HURTS society and all of us.

34. Arbitrator Peter Meyers didn't allow deposition of GE architect and Food and Drug administration's letter into evidence at arbitration hearing.

### FACTS RELEVANT TO CLAIMS ALLEGED HEREIN

Page - **9** -of **103** COMPLAINT                                    Madhuri Trivedi

#### A.  <u>Background of Plaintiff's employment at GE</u>

35. Plaintiff has bachelor in electronics and telecommunication engineering with distinction grade from India, Post graduate diploma in business administration(PGDBA) from India, Masters in Computer Information science from Cleveland state university, Ohio; and has done graduate certificate course( equivalent to Masters level but not a degree) in Systems design and management from Massachusetts institute of technology, Cambridge, MA. She has prior to joining GE worked in multiple domains including in enterprise solutions, biotech, enterprise security and healthcare IT;for big corporation as well as do or die entrepreneurial startups.

36. <u>**Plaintiff joined GE healthcare in Waukesha, Wisconsin in 2011 as a Lead engineer- fulltime GE employee.**</u>

37. ....prior to that I worked for GE intelligent platforms in 2010..GE interviewed me in 2009 and next day offered job on phone as a fulltime GE employee. After few weeks VP of engineering Reema Poddar mentioned that as GE has taken from government TARP(Troubled asset relief program) money; hence GE can't do my H1-hence would bring me on board first as a consultant-employed through Adecco-noramtec consulting(have them to H1B) and then after 2-3 months will do H1…I believed in their scheme and agreed. (At GE Intelligent Platforms in Boston; as part of a two engineer team reporting to Chief Technology Officer of GE Transportation Steve Edner, Plaintiff did Application development /support for remotely monitoring GE assets. This solution generated multi million in revenues for GE Intelligent platforms).GE emailed that they are happy and will do my H1 B transfer to GE (from Adecco/Noramtec consulting) as fulltime job with GE. GE filed my H1 B LCA with labor department- attached approved copy(by mistake lawyer wrote my OLD married name as 'Shukla') (EXHIBIT 20) –I left GE intelligent platforms as GE told me shortly after this that

they are terminating my contract. I didn't fight back then –At that time also immigration attorney

for GE was Fragomen Del Rey, Bernsen & Loewy, LLP law firm's Jenny S. Schrager.

38. Later GE healthcare came back in 2011 for Waukesha, WI full time job; even before

in-person interview I emailed GE manager David Mehring and architect Nate Davis ( EXHIBIT

21) that my PERM (with department of labor)for greencard needs to be filed at least 365 days

before My total 6 years of H1 runs out( H1 B expires) in order for me to get 1 year extension for

my H1 B until I get greencard.(.But after HIRING me, knowingly GEHC didn't file PERM at

least 365 days before my H1 so even when GEHC was terrorizing me I could left GE and work

at another company –so this was a conspiracy.). Jenny Schragger  Fragomen immigration

attorney should be in jail along with GE people.

39. **Plaintiff was terminated on May 31, 2013. Mediation was done in later 2013 and arbitration hearing was on May 2014.  Arbitrator Final award was given on August 11, 2014.**

40. Plaintiff contacted Food and Drug administration in December 2013 (EXHIBIT 5).

41. Plaintiff contacted Department homeland security in September 2013 by filing visa and going in person to Milwaukee, WI DHS office.

42. **For Dodd Frank act claims,** **breach of contract, SOX claims taking to district court, SEC related claims, some other others –Plaintiff was not aware of her right to go to district court earlier. No attorney she retained mentioned that prior.**

**B.  FBI supervisor Agent and FBI special agent in charge**

43. Plaintiff contacted FBI in Milwaukee, WI in April 2014. FBI Milwaukee Supervisor

1   Clayton Wible who after looking into details called back that GE matter is False Claims

2   Act/Quitam matter.

3        44. I contacted FBI again in California, San Francisco; wrote to special agent in charge

4   David Johnson in November 2015 about criminal investigation related to GE, my matter. He

5   assigned FBI agent. Last I met him in FBI San Francisco lobby in January 2017 and he said he is

6   leaving FBI and was SORRY; said that "it is not him".

7        45. Below is emails as reference.

8        From: Wible, Clayton M. (MW) (FBI) <Clayton.Wible@ic.fbi.gov>

9        Date: Tue, Aug 25, 2015 at 6:37 AM Subject: RE: Please contact US att General Loretta

10   Lynch  To: Madhuri Trivedi

11   Madhuri, As we have discussed before, I am unable to intervene or lobby on your behalf.

12   While the following does not represent legal advice, I can only suggest the very action(s)

13   I have suggested in the past: hire new, or keep working with existing, legal representation

14   to address your immigration matters. For the above reasons and more, I cannot and will

15   not be contacting AG Lynch as you requested. Sincerely, SSA Wible

16   **46. Later David was appointed as Executive assistant director of FBI reporting to**

17   **James Comey. In January 2017, David left FBI.**

18   47. aa

19   From: Johnson, David J. (SF) (FBI) <David.J.Johnson@ic.fbi.gov>

20   Date: Tue, Nov 24, 2015 at 9:20 AM Subject: RE: MIT alum: Work authorization,

21   Extreme hardship declaration, financial loss, humanitarian and distress

22   To: Madhuri Trivedi Cc: "San.Francisco" <San.Francisco@ic.fbi.gov>

1    Good morning—I have received your email and will have someone reach out to you.

2    Thank you. David

3    _____

4
5                              C. **GE fraud related**

6

7    48. *Connectivity –lucrative money making service contracts ( which generates annual*

8       *recurring revenue for GEHC( in terms of upto $8 billion per year) instead of*

9       *ONETIME sale of medical device) was better than critical defects-bugs-security*

10      *vulnerabilities-design nonconformance –all of these put public health, safety, security*

11      *and privacy of their data at risk and exposure. Poorly protected & patched , Internet*

12      *Network connected with No proper and adequate detection & alerting,*

13      *Vulnerabilities of devices are RECIPE of DISASTER in hospital, & health system .*

14      *When Plaintiff mentioned  that "why we are still shipping defective Insite2 product" ;*

15      *David Mehring mentioned that during a group meeting that "Connectivity is better*

16      *than Insite2 product" (means at least medical device will have connectivity).*

17
18
19
20                          **"InsiteEXC" "Insite2"**

21   49. At GE Healthcare, remote service and connectivity medical device "InsiteEXC" /

22      "Insite2" was remotely communicating and controlling 100,000 medical devices.

23      Medical devices were **ultrasound, MRI, surgery , Lunar, radiology servers** and

24      more. (Most of the GE medical devices were SOLD with INSITE EXC

25      PREINSTALLED; InsiteEXC was part of service contract offerings.

26
27
28

50. There were defects in terms of 465-2000 total bugs and **465 defects(EXHIBIT 9) in category of critical design non conformances in PRODUCTION (means already in USE at hospitals);** unresolved for several years and medical  Device  Insite Exc was launched in 2004.

# SPR Trends

| Count of Id | | Classification | | |
|---|---|---|---|---|
| Year | State | Defect-Design NC | Improvement Opportunity | Grand Total |
| 2004 | Assigned | 2 | 2 | 4 |
| | New | 4 | 4 | 8 |
| 2005 | Assigned | 5 | 8 | 13 |
| | New | 6 | 4 | 10 |
| | Resolved | 1 | 1 | 2 |
| 2006 | Assigned | 45 | 14 | 59 |
| | New | 32 | 9 | 41 |
| | Resolved | 27 | 7 | 34 |
| 2007 | Assigned | 27 | 5 | 32 |
| | New | 258 | 52 | 310 |
| | Resolved | 18 | 8 | 26 |
| 2008 | Assigned | 9 | 1 | 10 |
| | New | 6 | 1 | 7 |
| | Resolved | | 1 | 1 |
| 2009 | Assigned | | 1 | 1 |
| | New | 5 | 2 | 7 |
| 2010 | New | 12 | 2 | 14 |
| 2011 | Assigned | 3 | | 3 |
| | New | 5 | 2 | 7 |
| Grand Total | | 465 | 124 | 589 |

**Changes in 3Q:**
- 15 SPRs closed
- Reviewed and "dispostioned with justification" 12 Unacceptable Risk sprs imported incorrectly from DDTS

5.2 release

**Open Issues:**
- 465 Design Non-Conformances
- 124 Improvement Opportunit
- Will be closed with justificatio when RSvP program retires Questra back-office

51. It lacked security features, audit trails, activity logging and security reporting.. (i) the design and technology of Insite EXC  were flawed as they were plagued with 465 critical defects unresolved for several years including  severely deteriorating performance ---including but limited to that online engineers could not do remote connection to check, fix medical device( remote connection was a SELLING POINT for this product and all service contracts for insite EXC were signed based on remote connectivity; (ii) GE didn't publicly disclosed this issues; (iii) the Company lacked adequate management controls to report/fix/address these issues; and (iv) as

a result of the foregoing, GE's public statements were materially false and/or misleading and/or lacked a reasonable basis.

52. Fraud attorney at Cohen Milstein law firm said that it is fraudulent inducement.

53. GE performed sham quality tests and "willfully concealed the existence, frequency and severity of the products' defects," with "grossly inadequate testing procedures". Tech leads/seniors were skipping quality steps, testing needed.

54. For knowingly selling defective, life threatening medical devices used by Department

55. of Defense, Veterans Hospitals; medicare, medicaid ; other public government programs.

56. **Department of defense signed $400 million of service contracts in last ten years**

57. GE SEC filings 10-K state that *"Our products are subject to regulation by numerous government agencies, including the U.S. Food and Drug Administration (U.S. FDA), as well as various laws that apply to claims submitted under Medicare, Medicaid or other government funded healthcare programs."*

58. ( In 2013 , at Veterans hospital in NY patient died due to faulty GE MRI system.....so GE has been reckless in their devices).

59. For bringing this fraud and defects to management's attention and NOT willing to participate in their fraudulent scheme. Madhuri- I was harassed, received abusive treatment and wrongly accused of insubordination . She was also ostracized and marginalized by management. Since then I have been suffering terrorizing acts due to GE and their influence at all level

60. EXHIBIT 17 attached- for many GE devices, they are making claims that it has HIPPA /HITECH robust, security, audit trails, reporting which is false.

61. These medical products were critical to the care of the hospital patients, including

1   armed services personnel and veterans, and  The fact that the defective nature of these products

2   was not disclosed is unconscionable

3   62. While doing public release—intentionally hide information from shareholders and

4

5   63. SEC as per section 302 and 402  public release, inside and outside-company sales,

6   marketing and customer brochures with/for various medical devices such as surgery arm, cardio

7   etc. Sales information online for medical devices and public press release----and elsewhere

8   where GE omitted and misstated /failed to disclose any InsiteEXC issues/facts/truth --instead

9   bolstered it ..

10
    64. **the company is required to disclose all "material information" –information that**
11
    **an investor would consider important in the evaluation of an investment decision.**
12
13   65. Several Finance managers at GE knew it and they work with internal and external

14   auditors...

15   66. Laws prohibit deceptive practices for use, benefits of company business, revenue,

16   profit...

17
18   67. Failing to disclose material information concerning its usage, operation, maintenance

19   not as advertised, sold and mentioned in contract agreement; with intentional inducement ..failed

20   to willfully disclose and actively concealed defects for upto years( last 5-7 years where hundreds

21   of critical defects). Fraudulent Concealment by GE.

22

23   **I.    InsiteEXC internal customers struggle for months to establish connectivity**

24   **and Trivedi found short term fix**

25
26   68. While after joining GEHC in 2011, right on my 2nd week on joining GEHC I found a

27

28

work around where earlier online engineers ( internal customer Missy Polak Ryan also complained)couldn't do remote connection to medical devices in hospitals and hence couldn't fulfil service contract OBLIGATIONS WITH CLIENTS/signed with DOD-department of defense/other hospitals—for months they were struggling and engineering staff couldn't find solution to problems. On my 2nd week I found a work around and send document first to Glen Livermore which was used by hundreds of online engineers/service engineers, was CRITICAL globally to do remote connectivity -it was a bandage –short term fix ( to stop bleeding in operations and remote service and allow online engineer to do their jo and HENCE fulfil SERVICE CONTRACT OBLIGATIONS WITH CLIENTS). Long term fix was to developed new platform from ground up.

69. Male GE engineering staff looked (was obvious to they were incompetency) technically incompetent after above incident and as I started making waves.. Soon after that

## II.   Deposition of GE architect Bill Barbiux

70. Deposition of GE architect Bill Barbiux taken by Madhuri. Transcript deposition pieces(EXHIBIT 16)

**Page 3** Q Did I treat you with respect when I was withGE?

A Yes.

Q You had good working relationship with me , right?

A Yep.

Page 61 Q So in your opinion, the work I did for – I did for security VNC server issues on Surgery was good work, and it was good for GST given that I was a couple of months old within the company, and it was -- I was bringing tons of issues, and it

1   was too much for them.I was expressing tons of concerns, and it was truth. It was

2   not just -- It was happening. Things were not working the way they were supposed

3   to.

4   Q Good work for GST.

5

6   A Yes. Technically, I thought what you were doing -- a lot of what you were doing

7   Made sense………………

8   Page 107 Q Do you have knowledge that there were design nonconformances,

9   means defects in Insite ExC in production?

10   A Yes.

11

12   Q Do you have any idea of how many of them?

13   A I don't recall. I know there were several hundred or more.

14   Q So it says 465.

15   A Okay.

16

17   Q So your -- I'm talking about -- I'm just consolidating everything in one

18   sentence. Your point was connectivity is better than defects in Insite ExC. At the least we

19   wouldhave connectivity?

20   A Right.

21   Page 168 Q At the time of Insite ExC release, when it was public facing, it failed

22   a security test or had the security concerns?

23

24   A Yes.

25   Page 170 Q Insite ExC in production had security issues. Is that correct?

26   A The user interface, which is a little bit different, yes, had some security

27   vulnerabilities found during Scabba testing. Our mitigation was several things:

28

1   One of them was to move the user interface inside GE.

2   Q So some of the security vulnerability still exist today?

3   A Yes

4   Q So any GE employee inside GE network can potentially try to exploit that

5   vulnerability?A Depends on the vulnerability.

6

7   Q So is this -- Do you consider that's insider threat detection, and not having

8   Proper insider threat detection in place? Its considered insider threat detection, right?

9   ……………Given those security issues still exist where an insider can try to

10  potentially – or can try to exploit those.

11

12  Q Is it considered good security strategy or is it --

13  A To move the interface to the inside?

14  Q And keep those security vulnerability as --

15  A That was one of our only options. …………..The user interface was upgraded

16  from 4.1 to 5.2. That's where a lot of the vulnerabilities came in, so –

17

18          71. There are several other items Bill admitted as well (EXHIBIT 16 )

19          **III.**    **Retaliation and fraudulent integration of InsiteEXC when Trivedi reports to**

20                  **management, executive Dave Elario who further threatens to take Trivedi off**

21                  **job and more aggressively releases Insite**

22          72. Plaintiff suffered disparate treatment, retaliation harassment including sexual in

23  nature for not joining GE's fraud scheme.

24

25          73. GEHC manager David Mehring and project lead scheduled 23 days (EXHIBIT 26)

26  for me to finish ;

27

28

1000 pages worth of testing procedure and at the same time develop new testing procedure for 1000 pages that would work on linux and windows platform both and also work on linux while

74. Plaintiff Trivedi was working on a project "integration of Insite2/Insite EXC on surgery platform"; Ms. Trivedi found and investigated issues of product being vulnerable for security attacks/hacking. Security vulnerabilities were agent was accessible by multiple ports.

75. Being new to company I did contributed and delivered values. There is a Trend of shifting/putting blame inappropriately for things I am not responsible or I have no control over it, discrimination (being a female engineer and nationality) and retaliation for bring out those security/quality issues; while they were showing disregard to address/fix and prevent these very important issues from happening. It was a job needs to be taken seriously. This is a SERIOUS problem and I was trying to take care and was doing best job. My performance was geared for making sure that these kinds of quality/security issues does not happen to medical devices.  At GEHC, I put this at first and foremost in my daily job and duties.

76. When I pointed out deficiency on systems; manager/leads got upset and treated me discriminatory. Other employees who were doing this kind of work were not held accountable. They were not making waves. I was retaliated for coming out/coming forward. Manager differentiated between them and Ms. Trivedi in treatment when it came from a minority woman who is a hard working engineer. Ms. Trivedi was put on a PIP to **improve relationship** There are several factual evidences including but not limited to that Ms. Trivedi was working with dedication to quality, technical rigor, Inclusiveness and clear thinking.

77. When I requested a meeting with Dave Elario; he did not come as her mother got sick

1  he said. I sent information to him regarding what was happening via email. After sometime to

2  find a solution; in early February I requested Dave Elario's boss Mike Swinford to meet and help.

3  Mike sent Dave Elario to meet with me. Dave Elario got very upset at me as I went to his boss

4  and told me that even if his boss Mike wants to transfer me to another group/manager, Dave E.

5  won't let that happen and he will advise Mike Swinford against that and against supporting me.

6  Also Dave Elario threatened that he will take me out of job. (Ms.Trivedi thought there would be

7  an open door policy.) After a week of this they put me on a Performance improvement

8  plant(PIP). During PIP also managers lied of what we discussed my progress, manipulated

9  discussion and kept harassing me; beating me up no matter what I did..I was also all burnt out

10  and exhausted- mentally, emotionally and physically due to their torture and such disperate

11  treatment, retaliation.

12  78. My email to Dave Elario with highlights paragraph relevant this cause of

13  actions and allegation here. And Dave Elario's response email that I work on my relationship

14  skills.

| | |
|---|---|
| **From:** | *Elario*, David (GE Healthcare) <David.*Elario*@med.ge.com> |
| **Sent:** | Friday, November 16, 2012 8:07 AM |
| **To:** | Trivedi, Madhuri (GE Healthcare) <Madhuri.J.Trivedi@ge.com> |
| **Subject:** | Re: information |

---

Madhuri,

Thank you for the info. I know you spent time with Mike Truman and others a few weeks back. If there are open issues, please circle back with Mike or Dave Mehring.

One thing I've learned over the years is that not all of my ideas are supported. I've always tried to work to understand rationale at times but sometimes the business does make decisions to move in a direction. Sometimes, I've seen that my idea while not right at the time later got accepted. In the end, we all should stay focused on working on our responsibilities and building strong relationships.

Dave *Elario*
GM Core HCS Services
Global Services

3114 N. Grandview Blvd

---

........................................................

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Thursday, November 15, 2012 1:04 PM **To:** Elario, David (GE Healthcare) **Cc:** Trivedi, Madhuri (GE Healthcare) **Subject:** FW: information

Hi Dave Elario,

Resending this email again; it's 2MB size. Thank you for your time.

Best,Madhuri

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Saturday, November 03, 2012 6:20 AM **To:** Elario, David (GE Healthcare) **Cc:** Trivedi, Madhuri (GE Healthcare) **Subject:** information

Respected Dave Elario,

Hope your mother is feeling well now. I wanted to go over few things during our meeting.

☐ There had been some security/configuration issues when I was testing Insite Exc-agent for remote desktop was running on IPV4/IPV6 and also on multiple ports by default(so it is wide open for world to access and hack the system). There was lots of investigation and solutions I worked on to address these...but the project lead for that did not have any time scheduled for this. And was not helpful to address this. I had several HITECH/HIPPA training before and have worked in Healthcare and know it's addresses confidentiality, availability and security of data. so I wanted to address this as it was crucial.

1

So instead of addressing and investigating why it's failing; LSD and PL(mentioned this to manager

2

also) they were over confident and took Windows and Linux as same when it's apples and oranges. &
created problem for me.

3

.....................................

4

5

🔲 Greg yelled at RSVP team manager and lead several times and at the end for no reason he did that to
me. David Mehring told me that he has temper problem. So I have moved my cube(also I wanted to stay

6

away from microwave)

7

🔲 ONLY Due to my work and support since December 2011 till date InsiteExc customers-OLE(more than
100 OLEs have used documentation I created for support) can access device remotely using XP/Windows

8

........

9

So instead of addressing/supporting these; they took it other way--..Is there any guidelines when a

10

person is (doing a right thing and still tech leadership/manager do not take that into consideration and
instead use it against) for us so that the person who brings this up and it is properly addressed and taken

11

care and the person does not get into problem for doing right thing...

12

🔲 Doing right thing is what matter not pleasing people. I have always communicated nicely in a pleasing

13

way; people should understand enormity.

14

Due to all this people who report to core team and other GST team don't even report all good work I

15

do..Like my Exc support was never reported by the person in a quarterly review even though they know
that I am doing it while they report about other team member. Should not things that actually happened

16

should be reported.

17

This is short summary. I may send some remaining details later. I have worked in life science, Electronic

18

Med Records, Health insurance area and remote service- each day I come to work excited forgetting all
this behind but still others are not letting it go. When I am being blamed for things I am doing right..I

19

have told Dave M that I will improve my influencing skills going on and I am already reading a book-and
doing online courses.

20

21

🔲 I take ownership and deliver in agile (flexible to requirements and iterative) for projects from concept
through delivery; but all this is unnecessary friction- mentioning all this to manager during 10n1 also do

22

not do any good...are waste of time and energy and brings down my productivity because other people
are also reporting to them so they listen to them more even though it's not right. I take work as a

23

worship. Thank you very much for your time..

24

25

    79. Despite internal GE groups writing emails to Dave Elario that they can't fulfill

26

27

28

                   Madhuri Trivedi

contract obligation that they sign with customers( private , public and government hospitals , doctors who use these medical devices). And I Madhuri also informed managers/Dave Elario about these issues.

80. Dave Elario-General manger at GE bragged how aggressively GE is integrating Insite Exc( name of defective medical device) in couple dozen medical device types. This was audio video recorded during quarterly internal townhall for all employee meeting. Despite all these; He and GE kept integrating, installing and releasing into production and to costumers(hospitals) on all kinds of medical devices(aka ultrasound,); ..And were proud to finish modality integrations on as many modality as fast and as quickly and as they can. While beating Madhuri and working on systematically to get rid of her. Even after Dave Elario was made aware of issues and that it is misleading, false and omission by not disclosing these issues as well as GE was saying that it was HIPPA-HITECH complaint but Insite EXC lacked adequate controls for this; --most critical is Insite EXC failed security tests from DAY 1 and knowingly GE released it on all kind of medical devices for years..

81. It is Conspiracy and false case made against Madhuri to end her employment with GEHC . When GE kept harassing me when I was doing my job, tests failed and as GE knew defects but knowingly didn't tell me about them instead tortured me that I am slow and stupid. but the truth was I did understand but they were technically incompetent and were doing fraud by concealing these material defects to me, customers and public- stakeholders and stockholders, regulator)

## IV. CYBERSECURITY

82. Whistleblower Trivedi had reason to believe that by telling authorities about a

1   cybersecurity problem, or a company's failure to disclose one, they would be reporting a

2   securities-law violation.

3        83. Below email communication highlighted between Trivedi and general manager Josh

4            Hana.

5

6   That I got incorrect performance appraisal rating because of team member's technical

7   incompetence by prexetual manner rating me as "not inclusive"; also in retaliation to bringing up

8   security compromise.

9

10                                         ✓

11

12   **From:** Trivedi, Madhuri (GE Healthcare)
     **Sent:** Tuesday, May 21, 2013 2:38 PM

13   **To:** Hanna, Josh (GE Healthcare)
     **Cc:** Khan, Ayesha (GE Healthcare); Trivedi, Madhuri (GE Healthcare)

14   **Subject:** Information

15

16

17   Hi, Josh/Ayesha

18

19   **Bringing such things to Carl/Dave has not been helpful and I have no choice but**

20   **communicate to Josh/you in order to address root cause of the whole issue.**

21   As you both were new and not involved in much of history this is just one example.

22

23

24

25

26

27

28
     Page - **25** -of **103** COMPLAINT                              Madhuri Trivedi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This is just an example; I can go on for list of such items ( For Insite2(EXC), Old RSVP, New RSVP )where I had to bring up things as part of my job and my expertise. When doing that making issue about my growth value "How you do it" is a retaliation. Because leads missed it..maybe they were feeling insecure from inside when their short comings came out to be known by me. And Dave M /Carl didn't do much to address those in proper manner and make my issue even when it was said nicely. After several (close to 30-35) of such incidents and reporting to Dave M(some to Carl) ; nothing happens and then they give me hard time for no reason...I will have to go above the chain and escalate that to make sure senior management is aware and at least someone would address those in proper manner. After all I am a human being too and there is a limit one person can go on with such thing.

1

| From: | Trivedi, Madhuri (GE Healthcare) </o=GEMAIL/ou=First Administrative Group/cn=Recipients/cn=212070205> |
| --- | --- |
| Sent: | Tuesday, May 21, 2013 4:22 PM |
| To: | Hanna, Josh (GE Healthcare) <Josh.Hanna@med.ge.com> |
| Cc: | Khan, Ayesha (GE Healthcare) <Ayesha.Khan@ge.com> |
| Subject: | RE: information |

2

3

4

5

6

7   Josh, As you mentioned to know more what I am trying to point out here. I can stop by at your desk and explain quickly. Or can meet at Ayesha's office with three of us quickly to go over this emails( two emails mainly...I sent few updates to two subject emails today as to provide more information).

8

Such findings led to people feeling insecure and making me look non inclusive.

9

10

11   **From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Tuesday, May 21, 2013 3:42 PM
**To:** Hanna, Josh (GE Healthcare)
12   **Cc:** Khan, Ayesha (GE Healthcare); Trivedi, Madhuri (GE Healthcare)
**Subject:** RE: information

13

14

15   I said below close to 30 such incidents which involved security, usability, workflow, networking, IPV6, operating system missing libraries, design, architecture, requirements , performance of SW
16   applications and scalability and meeting GEHC requirements.

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**From:**   Trivedi, Madhuri (GE Healthcare) </o=GEMAIL/ou=First Administrative
            Group/cn=Recipients/cn=212070205>

3
**Sent:**   Wednesday, May 22, 2013 8:45 AM

**To:**     Hanna, Josh (GE Healthcare) <Josh.Hanna@med.ge.com>

4
**Cc:**     Khan, Ayesha (GE Healthcare) <Ayesha.Khan@ge.com>

5
**Subject:**  RE: Quality Center access & its details

**Attach:**  RE_ information.msg

6
7
8
9

Josh, I have attached another email. They have given me incorrect rating for minor issue which I am not

10
even part of. So is that fine?

11
I said in email attached there were close to 30 such incidents which involved security, usability, workflow,
networking, IPV6, operating system missing libraries, design, architecture, requirements , performance of

12
SW applications and scalability and meeting GEHC requirements. These incidents were of varying
severity from critical(stopped program for two months to low)

13
14

Such findings led to people feeling insecure and making me look non inclusive.

15
16
17

**From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Tuesday, May 21, 2013 3:46 PM

18
**To:** Hanna, Josh (GE Healthcare)
**Subject:** FW: Quality Center access & its details

19
20
21
22

**Respected Josh,**

23
24

**Security compromise I found out last year** when I was supporting FEs/OLEs for our product(which has

25
60,000 plus devices connected  ) and communicated to all team leads/managers last year which my

26
27
28

Madhuri Trivedi

Reporting such things in which I am not even invloved in creating those security vulnerability should be supported by leads/managers. They might have felt insecure because their short coming came to known by a newer person(I was just five month old employee within organization ☺ )

Also earlier the findings as part of support work email which I sent to GEHC teach leads/manager on June 11, 2012 and Dave M's reply email I received  as email attachment.

I am sending this as a kind of last email to clarify as I know your time is important. And I don't want to escalate that either unless needed.

Please let me know if I need to provide more clarifications to any of such items I mentioned .

Regards and thanks,

Madhuri

84. <u>FDA/department of homeland security and hospitals have raised serious concerns about cyber security of medical devices and possibility of attacks.</u>

85. <u>R</u>elated to security. Ms. Trivedi was proactively and diligently doing her job in this regards. Scott Erven –security researcher has been invited on various seminars for cyber security…so because of my efforts partly these cyber securities are getting attentions.

86. *In 2015, the Securities and Exchange Commission (SEC) <u>settled charges</u> that R.T. Jones Capital Equities Management violated the "safeguards rule" ; regarding its failure to adopt reasonable policies and procedures. Even though no one appeared to be harmed, the SEC censured R.T. Jones and fined the firm $75,000. Justifying the enforcement, the SEC said, "Firms must adopt written policies to protect their clients' private information and they need to anticipate potential cybersecurity events and have clear procedures in place rather than waiting to react once a breach occurs." In the Matter of R.T. Jones Capital Equities Mgmt. Inc.,*

*Investment Advisers Act Release No. 4204 (Sept. 22, 2015), available at*

*https://www.sec.gov/litigation/admin/2015/ia-4204.pdf*

87. *The Voya settlement represents a substantial step forward in the SEC's regulation of cyber-related activities. In the Matter of Voya Financial Advisors Inc., Exchange Act Release No. 84288, Investment Advisers Act Release No. 5048, at 3 (Sept. 26, 2018), available at* *https://www.sec.gov/litigation/admin/2018/34-84288.pdf.*

88. **GE was knowingly, defiant of lacked security and defects and despite my reporting and GE themselves knowingly.**

89. "For public companies and other entities regulated by the Securities and Exchange Commission, mismanagement of their cybersecurity violate securities laws."

90. A **material defect** is one that the Seller is aware of and would have materially impacted your **terms of** purchase and which the Seller was aware.

91. *SEC's expectations highlights the role of "cybersecurity whistleblowers," those reporting internally, in building the type of improved corporate culture necessary to discover and remediate cybersecurity risks.*

**V.     GE issue in this matter goes into question the oversight of the board.**

Under federal securities laws, directors have a legal obligation to disclose information to the public.•Disclosure requirements are established by the Securities and Exchange Commission.

92. Pat Hale- MIT professor for Systems engineering and a past president of INCOSE( International council on systems engineering)requested MIT general counsel to get involved and address this matter. But MIT general counsel and staff declined. Pat Hale retired before couple of years..

**VI.** **GE managers, senior management knew or recklessly failed to ascertain whether those statements were false and misleading. this behavior, in violation of the Securities and Exchange Act.** SEC. 302. <<15 USC §7241.>> CORPORATE RESPONSIBILITY FOR FINANCIAL REPORTS.

93. SEC has endorsed efforts to stop further violations of the Act, such as reporting suspected misconduct to internal supervisors.

94. Laws prohibit deceptive practices for use, benefits of medical device. Failing to disclose material information concerning its usage, operation, maintenance not as advertised, sold and mentioned in contract agreement; with intentional inducement, failed to willfully disclose and actively concealed defects.

### D. **Mediation and Arbitration with GE**

95. After GE terminated me illegally I filed EB1 –person of extra ordinary ability employment based -petition with USCIS(govt. agency);along with Harvard medical executive creating job for me at Harvard (job was after I get my EB1 approved as earlier Harvard said that they won't do H1 B ) ; and my innovative startup orangehealth for peer to peer crowdsourced support , management and actions for health conditions---and along with other credible evidences –I also mentioned National interest waiver EB2 category in that petition; but USCIS declined …

96. Since I used up almost all of my H1 B time and there was no time left for another

1    employer to do PERM with labor department in order for me to get further H1 B extension..Life

2    technology/thermos fisher scientific offered me fulltime job just two weeks after I was fired from

3    GE but got stuck at H1 B level as I mentioned I had no time on H1 for employer to do PERM.

4
      97. Several immigration attorneys mentioned GE has finance/accounting cooked books,
5
     checked history. Since next step in my immigration while I was at GE was to file
6

7    **form I140 with DHS/USCIS I 140 ; in I 140 form GE was required to show their finances**

8    **and total number of US based employees.**  So GE got rid of plaintiff and made up PRETEXT

9    issues of relationship skills to fire. Plaintiff can't confirm nor deny this; as plaintiff  lacks full

10
     knowledge plus Trivedi haven't spent my time verifying what those attorneys said. But writing
11
     here what attorney told Trivedi.
12

13      98.    GE immigration attorney and HR email that GE canceled my H1 B visa while

14   mediation and arbitration is PENDING. And won't pursue any immigration I 140

15   paperwork.(EXHIBIT 11) –same Jenny Schrager –Mean fragomen lw firm attorney.

16
        99.    Trivedi filed Mediation statement(EXHIBIT 13) through Cross Law
17
     firm(Waukesha, WI).
18

19      100.  GE offered ONE MONTH salary-that's it-nothing related to immigration at

20   mediation in return for plaintiff to waive all her rights/claims/cause of actions against GE.

21   Plaintiff declined to settle at mediation.

22
        101.  Trivedi filed arbitration complaint with American Arbitration association.
23
     (EXHIBIT 4). She was pro-se / representing herself ;and prepared arbitration statement.
24

25      102.  Arbitrator was insulting and continuously cutting me off from asking questions

26   during hearing ..when manager did perjury on second day morning of hearing I quit arbitration

27   hearing and GE finished it alone. .Arbitrator didn't rule in my favor.

28

103. After that Foley and Mansfiled sent a letter without bring up laws as I mentioned earlier in this lawsuit filed in District of Columbia. I wrote an email to Seymour Mansfield in 2016 –that law firm failed to provide me legal service and bring up laws.

104. Sean Scillen Quarles and Bradley attorney who represented GE at arbitration- he knowingly didn't provide EXHIBIT 22; where manager Dave Sallis "gave good rating in my performance review and wrote that it is GE's problem"-Sean didn't give this document during discovery(otherwise I would called Dave Sallis as WITNESS in hearing—and gave on the day of hearing –seconds before hearing began and I have that in hearing transcript.

105. Neil Stekloff ; GE's internal counsel  for employment and labor(EXHIBIT 2) was involved. As a lawyer he also violated obstruction of justice.

106. *17 CFR § 205 and (15 U.S.C. 7245) Case 3:15-cv-02356-JCS Document 132 SEC amicus brief on attorney code of conduct Section **307 of** the Sarbanes-Oxley Act of 2002 (the "Act") (15 U.S.C. 7245)*

It was GE counsel's legal duty to report SEC violations but Sean Scullen-quarles and Bradley, Neil and all others teamed up to cover-they should not be practicing law anymore.


**E.  GE declined government arbitrator; who told that he will RULE in Plaintiff's FAVOUR if selected.**

107.    Peter Davis- a chief arbitrator/legal counsel at Wisconsin Employment relations

1  commission. peterg.davis@wisconsin.gov .He mentioned to me on phone that if he is selected as

2  an arbitrator for my case with GE, he will make sure to fix my immigration and he will rule in

3  my favor. He told me this on Dec 2013 that I is willing to talk about this to anyone...

4

5      108.    GE attorney declined via email to have him as arbitrator (GE argued that if Peter

6             is selected then arbitration documents would have become public documents as he

7             was a PUBLIC ARBITRATOR hence GE is declining).

8

9  Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-ACTIVE.FID36842469]

10 From: sean.scullen@quarles.comTo: madhuritrivedDate: Wed, 27 Nov 2013 20:55:08

11

12 I don't understand your question -- in a mediation the mediator doesn't take sides and is a

13 neutral that works with both parties to try to reach a voluntary resolution.  In some of the

14 cases in which Mr. Gibbons has served as a mediator we have been successful in reaching

15 such a resolution and in others we have not.  **You are correct that the WERC people**

16 **are not mutually agreeable.**

17

18 **Sean Scullen**

19 From: Madhuri Trivedi  Sent: Wednesday, November 27, 2013 2:50 PMTo: Scullen,

20 Sean (MKE x1421)Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-

21 ACTIVE.FID36842469]

22

23 what about mediation that you worked with him on...**so Wis. Emp. relations people are**

24 **not mutually agreeable between us..** Sincerely,Madhuri

25 From: sean.scullen@quarles.com To: madhuritrivedi

26

27 Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-ACTIVE.FID36842469]

28 Date: Wed, 27 Nov 2013 20:47:51 +0000

1   Mr. Gibbons has not served as an arbitrator in a case that I have handled or for GE as far

2   as I am aware.  I'm not sure who the Wisconsin Employment Relations arbitrator you're

3   referring to is, but we are not interested in using someone from that entity.

4   Sean Scullen

5

6   From: Madhuri Trivedi Sent: Friday, November 22, 2013 11:20 AMTo: AAA Carol

7   PlacellaSubject: RE: Trivedi/GE Healthcare 11-15-2013

8   So we can have Peter Davis as arbitrator..If we can then I will contact Mr. Scullen. I

9   wanted to reach out to you first. Sincerely,Madhuri.

10

11

12   **F.   GE internal dispute resolution policy called 'Solutions' - Excluded Claims**

13   **and Law firms, attorneys' plaintiff retained with PAID FEES didn't provide legal advice**

14   **nor brought up to GE, mediator, arbitrator-- SOX, Dodd Frank, Quitam, NDDA DOD and**

15   **several other laws, Whistleblower protection laws. Nor the ones who did free review.**

16   109.   **GEHC Chief technology officer Mike Harsh told me on phone in 2017( he**

17        **came**

18

19   **to my arbitration hearing in 2014 and after hearing he left GE after 35 years of service.)**

20   **NO ATTORNEY will bring up laws that in my situation as GE pays a LOT to attorneys.**

21   *I.*   *GE internal dispute resolution policy called 'Solutions' =Excluded Claims,*

22

23   110.   *excluded from Levels III and IV of Solutions, are claims that allege concerns such*

24        *as the following Claims that do not allege legally protected activity or enforceable*

25        *rights in the jurisdiction in question; ..Claims based on alleged violations of the GE*

26        *Policy on Working with Government including, but not limited to, alleged violations*

27

28        *of the federal False Claims Act ...........Claims brought by or against Covered*

*Employees, where a third party would be necessary to the resolution of any claims or where the absence of the third party could subject the Company or the covered employee inconsistent obligations, and all parties do not agree to participate in Level III and are to be bound by an arbitration under Level IV of solutions policy.*----------

***Excluded Claims, which are excluded from Level IV of Solutions****: In addition, claims which, by applicable statute, regulation or other legal requirement are precluded from mandatory coverage under a pre-dispute binding arbitration are considered excluded from level IV solutions.(see appendix C)*

## *Appendix C*

*In addition to the descriptions in Sections K ("Covered Claims") and L ("Excluded Claims") of the Solutions Procedure, claims that are considered "Excluded Claims" with respect to Level IV of Solutions, because by applicable statute, regulation or other legal requirement they are precluded from mandatory coverage under a pre-dispute binding arbitration agreement, include:*

*Claims arising under section 1514A of the Sarbanes Oxley Act of 2002, as amended,*

*Claims arising under section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act*

*Claims arising under Section 748 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (relating to Section 23 of the Commodity Exchange Act)*

111.   Jeff Goldman sent a letter to GE but he was just an immigration attorney so it is understood that He can't bring up employment rights.

112.   But other attorneys who I paid were. **All of the below mentioned attorneys READ –**

**GE's solutions policy which is ADR- mediation, arbitration and it states Dodd Frank, quitam, SOX and other excluded claims as stated above..**but none of these attorneys told me anything regarding this and I found out on my own LATER kind of recently about Dodd Frank act related section 718 excluded claims. So I was kept in DARK by my own hired employment attorneys.

113.   Law firms attorneys never mentioned my rights and laws related to GE violations related to any of above excluded claims and more. Though it clearly says that Dodd Frank Act section 718 whistlblower claims are excluded. Since GE is a public company as lawyers it was their duty tell me about SEC and fraud and filing a lawsuit under Dodd Frank act section 718 that I am eligible in court. -- as per legal, professional, ethical obligations as they were PAID money to represent, retained and conduct mediation, arbitration and send legal letter to GE,  provide legal consultation…bring up laws ..But no one did..

114.   And I lacked legal knowledge. **For me it was like a sailing in legal ocean and reading laws.. And I trusted kind of what they told which was a BIGGEST MISTAKE.**

115.   **( a)CROSS LAW Firm in Waukesha, WI(www.crosslawfirm.com)** I paid this law firm .Cross law firm represented me at mediation and prepared mediation statement and sent to GE.

116.   Cross law firm attorney should lose their attorney license and disbarred for what

they have done. Look at EXHIBIT 13 ;mediation statement ; they didn't bring up any laws

,whistleblower rights other than simple discrimination. They didn't even mention retaliation after

reporting discrimination, unlawful employment practice (42 USC § 2000e-3(a) )or anything.

Law they cited was 42 USC § 2000e-2(a)(1)..Hence their mediation statement was flawed and

the intentionally DID THIS.

117.    Later Cross law started threatening me to settle with GE by taking one month

salary (I have those emails) and waive all my rights and claims against GE. Cross law firm

left.**<u>David Rosenow told me that as GE is his neighbor in little town Waukesha, WI ; He</u>**

**<u>won't mention that GE was doing fraud in my mediation statement.</u>** (cross law firm was

fired by me) **after they forced me to settle and even didn't bring any claims.** I did mediation

alone.  Cross law firm didn't bring up Quitam claims in mediations statement , SEC  Dodd Frank

act Section 718, 10 U.S.C. §2409  Subpart 203.9,SOX –OSHA,  obvious as black and white

clarity **that they were SOLD**. (Other attorneys were not willing to work on alternate dispute

resolution as they litigate in court and hated GE ADR plus said that they are not experts etc etc.;

so I was stuck with Cross law firm as clock was ticking)

From: Attorney Daniel L. Rosenow [mailto:drosenow@crosslawfirm.com]

Sent: Friday, September 13, 2013 9:33 PMTo: 'Madhuri Trivedi'Subject: RE: info for

breaches.

Ms. Trivedi,

Given that it was your job to find and fix such security breaches, there is a significant

hurdle for you to overcome in stating a whistleblower retaliation claim.

118.    **(b) Despres, Schwartz and Geoghegan, Ltd. (dsgchicago.com)**

**I paid this law firm .This law** firm was hired to represent me at Arbitration hearing. They sent

Pre arbitration hearing brief to GE and arbitrator (EXHIBIT 14).... his theme was

*when it comes to competent women "soft skills" becomes a proxy for "too aggressive," i.e., not*

*acting like a woman –*

119.    But he didn't bring up any whistleblower, SOX, DOD Frank claims and other

claims as I mentioned here in brief nor mentioned to me nor to GE when he represented me…I

wantedto bring whistleblower retaliation, HIPPA laws retaliation, Cybersecurity related

retaliation and more…he left and I did arbitration on my own without an attorney.

120.    **(c) Foley and Mansfield (foleymansfield.com)**

I paid this law firm for all the work they did. Later I contacted Foley..I told them for Quitam

matter..Look at the letter they sent to GE(EXHIBIT 15) ..They also didn't bring Dodd Frank act

whistleblower, SOX, any  claims mentions here when they sent a letter to GE, later negotiated

with GE nor afterwards. Immigration right ( ) –was included in a leter to GE because I emailed

them about this as I read.

121.    Foley didn't  mention which to me appears as (intentional omission or /and

negligence) on any steps related to OSHA complaint, SOX whistleblower even though I gave

them what I submitted to OSHA, OSHA complaint and OSHA response. I wrote an email to

Seymour Mansfield in 2016 –that law firm failed to provide me legal service and bring up laws..

122.    Though David haron at Foley was looking into quitam; but his two partners were

pregnant and he didn't know; and he said that one of the Quitam case with Quest diagnostics is

going to Trial etc etc–

123.    I also sent arbitrator final award to them and they didn't provide any guidance on

going to court after arbitration award. Also Foley didn't mention/bring up any rights related to appealing arbitration or going to court .And as my lack of legal knowledge I relied on them and assumed/believed that there was nothing I can do..But later I learnt than one can go to court shortly after arbitration to challenge arbitrator award.

### Other Attorneys

124.     **(a)I didn't HIRE OR PAY Andrew Beato-** He looked at my claims free. Andrew Beato was looking himself into Quitam matter but somehow GE found out and GE contacted Andrew's partner to represent GE in another matter..So Andrew left saying that as his law firm partner is going to represent GE ,he can't work on my quitam /false claims act case.

From: Andrew M Beato <ABeato@steinmitchell.com>Date: Tue, Sep 9, 2014 at 3:27 PMSubject: Re: Call To: Madhuri Trivedi <mcis99@gmail.com>, "James R. Kelly" <JKelly@steinmitchell.com>

Thank you Madhuri.  I appreciate your clarification.   If there are any other reporting or disclosures you made to government agencies or to attorneys, please let us know so that we are aware of it.  In the meantime, we appreciate your patience.

 Andrew M. Beato ,Stein Mitchell Muse Cipollone & Beato LLP

1100 Connecticut Avenue, NW Suite 1100 Washington, DC 20036(202) 737-7777 (Main Number) (202) 296-8312 (Fax) ABeato@SteinMitchell.com

From: Madhuri Trivedi <mcis99@gmail.com>Date: Tue, 9 Sep 2014 17:03:39 -0500 To: James Kelly <JKelly@steinmitchell.com>Cc: Andrew Beato <abeato@steinmitchell.com>

Subject: Re: Call

1    Attorney Andrew, thanks for your time. I had reported to OSHA-whistleblower.gov.

2    125.    They looked in to it. and said it does not fit into their 22 statues. They have device

3    manufacturing related statue but it excludes medical device and drug manufacturers. THey said it

4    is a valid concern, And employee does not have to prove , as long as have believed reasonably

5

6    that there was a violation and reported. But in my case I had evidence which was good.

7    126.    **(b)I didn't HIRE OR PAY David Nelson.** He looked at my claims free. David

8    Nelson –SEC attorney (David Boise law firm attorney and he was SEC regional director prior to

9    that) reviewed my matter in 2013-2014 **but he didn't mention to me which whistleblower**

10   **laws, which SEC laws, what needs to be done next ,**-only things he mentioned after reviewing

11

12   along with his assitant was that I have valid, SEC claims against GE but his law firm represents

13   defendants and also they change hundreds of thousands in retainer and lot more to represent me

14   in SEC matter.

15   From: David Nelson <dnelson@bsfllp.com>

16   Date: Mon, Jun 23, 2014 at 9:21 AM

17

18   Subject: RE: should I send my deposition ?

19   To: Madhuri Trivedi <mcis99@gmail.com>

20   Cc: Aaron Marcus <amarcus@bsfllp.com>

21   Madhuri, today is hectic and I have some meetings tomorrow.  Is Wednesday possible for

22   you at some point?  Dave  David Nelson

23

24   BOIES, SCHILLER & FLEXNER LLP

25   401 East Las Olas Blvd.  Suite 1200 Fort Lauderdale, FL 33301

26        (Ph)  954.356.0011 (Direct) 954.377.4233(Cell) 954.213.8810

27

28

127.    **( c) Scott Oswald of employment law group-** employmentlawgroup.com, and is assistant reviewed everything but never brought up SOX, Dood Frank act and/or other claims ----...

128.    **(d)**To some I just paid consulting fees and to some they reviewed without any fees but none of them mentioned Dodd frank Act related claims or other claims.

### FIRST CAUSE OF ACTION

### SECURITIES EXCHANGE ACT OF 1934, 15U.S.C. 78j(b), AND 17 C.F.R. 240.10b-5

129.    Plaintiff Trivedi incorporates by reference paragraphs 1 to 128 above, as though fully set forth herein, as well as facts currently unknown.

130.    **Cases that held misleading product and service information to be the basis for Rule 10b-5 liability** include *Warshaw v. Xoma*, 74 F.3d 955 (9th Cir. 1996); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989); and *In re Carter-Wallace Sec. Litig.*, 150 F.3d 153 (2d Cir. 1988).

131.    **As SEC Chairman Clayton noted in his September 20, 2017 public statement,**

**"Cybersecurity vulnerabilities can result in denials of service and the destruction of systems, "loss or exposure of consumer data, theft or exposure of intellectual property, and investor losses resulting from the theft of funds or market value declines in companies subject to cyberattacks."  Protecting employees who report information security deficiencies is critical to enabling companies to detect cybersecurity threats that may otherwise go undetected.**

1

2          132.    17 C.F.R. § 229.303(a)(3)(ii); *see also* Donald C. Langevoort & G. Mitu Gulati,

3          *The Muddled Duty to Disclose Under Rule 10b-5,* 57 Vand. L.Rev. 1639, 1680

4          *(2004). It follows that Item 303 imposes the type of duty to speak that can, in*

5          *appropriate cases, give rise to liability under Section 10(b).*

6

7          133.    "an omission is actionable under the securities laws when the corporation is

8    subject to a duty to disclose the omitted facts." *In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259,

9    267 (2d Cir.1993); *see Glazer v. Formica Corp.,* 964 F.2d 149, 157 (2d Cir.1992). Such a duty

10   may arise when "statute or regulation requiring disclosure," or a corporate statement that would

11   otherwise be "inaccurate, incomplete, or misleading." *Glazer,* 964 F.2d at 157 (quoting *Backman*

12   *v. Polaroid Corp.,* 910 F.2d 10, 12 (1st Cir.1990) (en banc)); *accord Oran v. Stafford,* 226 F.3d

13   275, 285-86 (3d Cir.2000).

14         134.    As required elements of those filings, Item 303 disclosures **"give GE investors** an

15   opportunity to look at the registrant through the eyes of management by providing a historical

16   and prospective analysis of the registrant's financial condition and results of operations. Due to

17   the obligatory nature of these regulations, a reasonable investor would interpret the absence of an

18   Item 303 disclosure to imply the nonexistence of "known trends or uncertainties

19

20         135.    **Trivedi allege that as per SEC rule 10b(5) ;GE's failure to make adequate**

21   **disclosures under**

22         ✓ **Cybersecurity risks, Regulation SK Item 503** (17 CFR § 229.503-Prospectus summary

23             and risk factors),

24         ✓ **Management discussion of cybersecurity issues under Regulation S-K Item 303**

28

1      ✓   Material weaknesses in internal controls under SOX Sections 302 and 404 addressing

2          cybersecurity

3      ✓   *GE failing to disclose cyber security, information security issues,465 critical defects*

4          *could be committing shareholder fraud or violating SEC rules relating above items*

5

6      ✓   InsiteEXC issues that materially affect the operations.

7

8  **may serve as basis for a Section 10(b) claim against GE.**

9

10      136.    GE as a public company required to address cybersecurity issues in its public

11  filings pursuant to its requirement to disclose significant risks to its business. If in doing so GE("

12  company") omits known, actual threats, it may violate the securities laws. See *Matrixx*

13  *Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309 (2011) –

14

15

16      137.    Regulation S-K prescribes certain disclosures that a corporation must include in

17  its public filings, such as its annual report (10-K) and its quarterly report (10-Q).4 Item 503(c) of

18  SEC Regulation S-K requires a corporation to disclose risk factors and discuss the most

19  significant factors that make an offering speculative or risky (17 C.F.R. Part 229.503(c) –

20  company may violate SEC Rule 10b-5 when making public disclosures if it misstates or omits a

21  material fact See 17 C.F.R. § 240.10b-5 – that's what GE did for it's 465 defects, shity

22  InsiteEXC and cybersecurity issues.

23

24      138.    In relevant part, the rule states:"It shall be unlawful for any person … [t]o make

25  any un true statement of a material fact or to omit to state a material fact necessary in order to

26  make the statements made, in the light of the circumstances under which they were made, not

27  misleading…in connection with the purchase or sale of any security."

28  Page **- 44 -**of **103** COMPLAINT          Madhuri Trivedi

139.   GE publicly dismissed reports Scott Erven submitted in 2015 in –Forbes news article .

140.   Vulnerable Breasts And Brains? Cancer Scan Tech Has Terrible Password Security https://www.forbes.com/sites/thomasbrewster/2015/07/10/vulnerable-breasts/#62a219406b5a   July 10 2015

...............

bones. But what if the humans who created those technologies didn't secure them properly from outside tampering, potentially leaving patients open to dangerous doses of radiation? A researcher has uncovered a wide range of X-Ray and CT (computerised tomography) technology that appears to be vulnerable. And it's that old problem, the use of poor passwords, that's to blame.

Looking through reams of publicly accessible documentation, researcher Scott Erven, from consulting firm Protiviti, discovered that one of the biggest medical device providers in the world, GE Healthcare , had pushed out a large number of nuclear imaging machines with weak default credentials. These included the Discovery NM750b, a dedicated breast

1  Erven told GE about the issues back in August last year, before informing
2  the US government-funded Industrial Control System Computer Emergency
3  Response Team TISI +0% (ICS-CERT). He is unsure whether GE is going to
4  address the problems, saying the company's response was to say they were
5  just default passwords and could be changed. But Erven said in some cases
6  the documentation specifically asked the user not to change default
7  passwords, as it may prevent GE services providing support. Erven often
8  found it hard to find any information from GE on how to change passwords.

9  "GE Healthcare's general recommendation is that customers should change
10  default passwords on their healthcare devices wherever possible to increase
11  the protection and security of their medical systems, and guidance is
12  provided in device documentation," a GE Healthcare spokesperson said.

13
14  "It is important for our customers to decide on the levels of security they
15  place on all their medical technology to ensure availability for their care
16  needs as it will depend on how the devices are used in a hospital setting.  GE
17  Healthcare significantly invests in privacy and security and will continue
18  staff training to support our customers."

19  The dangers of an attack on nuclear imaging technology are patent. First,
20  there's the risk that private data, literally data from under people's skin,
21  could be stolen, as well as any other patient information stored on the
22  affected machine. Second, if the configuration can be changed and the
23  dosing increased, there's a physical threat, according to Erven.

24
25  Nuclear imaging sees patients exposed to ionizing radiation, where particles
26  penetrate tissue to map out the innards of the body. Such radiation can
27  damage DNA and high doses might increase the risk of cancer.

28
Madhuri Trivedi

141.    Section 10(b)'s materiality requirement is satisfied when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."

142.    Sales information online for medical devices and public press release----and elsewhere where GE ommitted and misstated /failed to disclose any Insite issues/facts/truth -- instead bolstered it .youtube video (EXHIBIT 17).

143.    *Web content inadvertently be considered an offer to sell or solicitation to buy Securities.*

144.    **The SEC has acknowledged the role of company websites and social media platforms in communicating with investors (e.g., for purposes of Regulation Fair Disclosure, or "Regulation FD")**

*According to the SEC in the May 2000 Release (see Section II(B)(1)), a company may be subject to the antifraud provisions of the federal securities laws for any page on its website if the page "reasonably could be expected to reach investors or the securities markets regardless of the medium through which the statements are made, including the Internet."*

145.    A company should assume that all or substantially all of its web content may expose it to liability under the securities laws. Material misstatements or omissions in web content may be violations of Rule 10b-5 under the Securities Exchange Act of 1934. In addition, as the definition of the term "offer" in Section 2(a) of the Securities Act of 1933 is interpreted

1  broadly, many web pages, including web pages intended to serve market or promotional

2  functions, might be considered to contain an offer under the Securities Act.

3

4      146.   *As per  (https://www.investopedia.com/terms/s/sec-form-def-14a.asp)*

5  *SEC Form DEF 14A is most commonly used in conjunction with an annual meeting*

6  *proxy. The form should provide security holders with sufficient information to allow them*

7  *to make an informed vote at an upcoming security holders' meeting or to authorize a*

8  *proxy to vote on their behalf. Proxy statement it discloses material matters of the*

9  *company relevant for soliciting shareholder votes and final approval of nominated*

10  *directors as in DEF 14A.*

11  *Form DEF 14A is often overlooked by the average investor. It contains key details on*

12  *corporate governance, listed in the next section, that are scrutinized assiduously by*

13  *activist and like-minded investors. The proxy statement helps shareholders understand*

14  *corporate governance practices when it comes time to cast their votes for the proposed*

15  *items.   Lifting the Veil on Corporate Governance Practices*

16  *SEC Form DEF 14A is a shareholder's main document to understand the composition of*

17  *the board of directors and how they oversee management of the company. The board is*

18  *responsible for the formation and running of committees-- Activist investors serve an*

19  *important function in speaking up when they find certain corporate governance practices*

20  *objectionable.*

21      147.   If GE would have disclosed InsiteEXC material information ; it would have given

22  GE shareholders including activist investor; TRUE STORY and STATE about their

23  connectivity which ; Jeff Immelt and Still today GE is making multi billion bet.It

24  would have made investors take into consideration HIGH STAKE and RISKS<

1       <u>LIABILITIES that connecting GE assets to internet brings and it's history, corporate</u>

2       <u>culture about these issues, mindset. It is clearly shows how serious GE and it's</u>

3       <u>management is. Cyber Security researchers have also shown concerns.</u>

4

5   148.    To best of plaintiff's knowledge and search using -EDGAR Search Tools on

6       SEC.gov website; searching GE's public filing with SEC including since 2007 to

7       2018;type of filings 10-Q, 10-K, 8-K, DEF 14-A…

8   ✓ it shows that GE painted ROSY picture of it's digital solutions (Internet of Things platform

9   where Jeff Immelt put billions). Mentioned that "it's market is up to $8 billion and wants

10   everybody using it" as stated in 8-K form.

11

12   ✓ GE DEF 14A –annual reports from 2012, 2014,2011,2013 has no mention of broken

13   InsiteEXC( period realted to Trivedi's employment and arbitration)

14   ✓ Also ---but intentionally not disclosing that still their CYBERSECURITY for

15   these connected devices ( upto 2018 government DHS alert)is in STONEAGE (EXHIBIT 1) ;

16   vulnerable to hack, exploit and manipulation by a LOW SKILLED person(anyone with a low

17   skill could hack and attack, take full control of medical device, stop device from functioning,

18

19   change setting and more of such attack vector) which GE knew since 2014..But never made it

20   public, nor filed any SEC filing in terms of 10-K, 10-Q, 8-K , DEF 14-A.  No mention in **Item 7.**

21   **Management's Discussion and Analysis of Financial Condition and Results of Operations,**

22   SIGNIFICANT TRENDS & DEVELOPMENTS MD &A,Forward-Looking Statements, "Risk

23   Factors" , Item 7  operations.. Forward-Looking Statements" in BHGE's most recent earnings

24   release or SEC filings; and●   the other factors that are described in "Risk Factors"

25

26   149.    \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

27

28

150.    To best of plaintiff's knowledge and search using -EDGAR Search Tools on

SEC.gov website; searching GE's public filing with SEC

Filing 10-K - For year 2007 ,2008,2009,2010,2011,2012,2013,2014,2015,2016 mentions

INSITEEXC as follow

Item 7  operations..SIGNIFICANT TRENDS & DEVELOPMENTS MD&A

Healthcare SEGMENT - Our product services include remote diagnostic and repair

services for medical equipment manufactured by GE and by others, as well as

computerized data management and customer productivity services.

OR

Healthcare systems also offers product services that include remote diagnostic and repair

services for medical equipment manufactured by GE and by others.

151.    But GE's omission of facts pertaining to an actual, known risk since 2007 about

InsiteEXC cybersecurity vulnerabilities and Scott Erven's hacking exploit report from

2014, my internal reports from 2011 to 2013 to GE and later in 2014 during

arbitration, and even when I sent email to Mr. Flannery in 2017

violate the requirements of Regulation S-K Item 303 and Rule 10b-5.

152.    Thus, reporting an information security issue that contradicts or undermines the

company's management discussion and analysis of cybersecurity is protected under SOX, Dood

Frank act.

153.    All of these filings 10-Q, 10-K, 8-K,DEF 14-A has no mentioning abut cyber

security before and since Madhuri was doing mediation/ arbitration in 2013 /2014—2015 DEF

14A says they care paying attention to cybersecurity in GENERAL while no mention of

InsiteEXC ..I am glad that I became a catalyst/inspiration for GE to atleast at general level add

cybersecurity word in their filings.

154.    GE knowingly never released patch nor made press release/public disclosure nor

SEC filing about Icert /DHS alert about security vulberabilities related to Scott Erven nor me nor

all issues related to insiteexc....so these two are contradictory and shows that GE conspired

,played with regulators and investors, public by saying something and doing something

else...because after reading DEF 14 A it looks nice that how GE is doing in digital world –

internet of things –but at the same time have not addressed and kept public vulnerable to hacking

attacks; and in effect CIRCA STONEAGE.

155.    Later in 2016- 2017 filings GE included generic disclosures in their management

discussion and analysis about cybersecurity issues that could materially affect the corporation's

financial condition and operations.

✓  On top of all these Sachin Kendale who wrote code that took 40 minutes to load 1000

medical devices on a webpage; was never able to solve issues and support related to InsiteEXC

customers and PRODUCTION; who lacked technical competency ;as per Linkedin –in 2018

Sachin has been promoted to Senior engineering manager (Sachin holds one bachelor in

engineering from India) and architect driving GE's PREDIX –internet of things. Putting

incompetent people who lack expertise and passion for cybersecurity is a "RECIPE FOR

DISASTER"…Also GE sending a message that if you keep your mouth shut ( unlike Plaintiff Trivedi); we give "TROPHY to the LOOSERs"

156.    Misleading statements or omissions of fact are included in forward-looking statements, the corporation GE may not be insulated. Required forward-looking disclosure including totality of the company activity."

157.    As GE made NO mention of cybersecurity vulnerabilities till date in its public Filings.

158.    GE  violate Sections 302 and 404 of the Sarbanes-Oxley Act as it fails to disclose material weaknesses in its internal controls related to information security. From 2007 to 2014 till Trivedi's arbitration ; GE had not mentioned such cybersecurity related controls and it's weakness. Section 404 of SOX requires a corporation to assess the effectiveness of its internal controls in its annual reports, and an outside auditing firm must evaluate that assessment. Material weaknesses in those internal controls must be identified. 15 U.S.C. § 7213

159.    15 U.S.C. § 7213(a)(2)(A)(iii)(III)a description, at a minimum, of material weaknesses in such internal controls, and of any material noncompliance found on the basis of such testing.

160.    Section 302 of SOX requires a corporation's CEO and CFO to personally certify the accuracy and completeness of financial reports, and they must assess and report on the effectiveness of internal controls around financial reporting.( 16 15 U.S.C. § 7241)

1

2       161.    All these years from 2007 to 2014 (Jeff Immelt certify ) and later upto 2018 other

3              CEO including Jeff Immelt.

4

5       \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

6

7       162.    ( *In re Harman Int'l Indus., Inc. Securities Litigation, 791 F.3d 90 (D.C. Cir.*

8              *June 23, 2015) – https://www.cadc.uscourts.gov/internet/opinions.*

9              *nsf/1B7208ADC298E6C985257E6D00539C76/$file/14-7017-1559106.pdf.    )*

10

11          *In Harman, an electronics company made forward-looking statements that reflected*

12      *positively on its sales outlook. However, the plaintiffs alleged the company was aware of*

13      *historical facts strongly indicating that its sales prospects were less than stellar. In*

14      *holding that the plaintiffs' case could proceed, the court found that the company's*

15      *cautionary statements about the forward-looking information were not meaningful*

16      *because they were misleading in light of the historical facts. Because the company*

17      *warned of only general, unspecified risks that could affect its rosy outlook, but did not*

18      *disclose actual risks that had already manifested, the safe harbor would not apply to the*

19      *forward-looking statements. The court explained that a "warning that identifies a*

20      *potential risk, but 'implies] that no such problems were on the horizon even if a precipice*

21      *was in sight,' would not meet the statutory standard for safe harbor protection."*

22

23

24

25

26      163.    **Insite Exc application in production** was vulnerable for online attacks and there

27

28

were security issues.  Madhuri reported ( as frustrated internal customers and online engineers came to Madhuri , asking her help and opening support tickets) June 2012 that Insite Exc code needs to build with newer version with security update to address memory/online attack issue.. **"Enable memory protection to help mitigate online attacks" which was required to be unchecked in settings in order to establish/install remote connectivity.** (EXHIBIT 30 ).

164.    Interesting is that given GE has enormous amount of money and resources; as shown in EXHIBIT 30 it used out of date ACTIVE X controls. ActiveX in itself poses several cyber securities threats and is not considered very good/ INSECURE PROTOCOL...Microsoft has stopped providing support to ActiveX  ; It is considered DEPRICATED for SECURITY reasons too given it's attack vector..

165.    At GE; ActiveX controls were built without SECURITY update . ActiveX control were required to be built using Visual Studio C++ 2005 or higher and it was June 2012(EXHIBIT 30)—It shows GE used old, out of date, STONEAGED cybersecurity components.  Since 100 or so online engineers were stuck and were not able to establish remote connectivity due to this ActiveX issue...GE needed some quick fix...as I mentioned in the email running ActiveX and establishing connectivity –encounter compromise.

166.    The ActiveX security is designed on how USER of ActiveX chooses various SECURITY options and be a Cyberpolice for own usage of ActiveX.The ActiveX security model relied almost entirely on developers promising not to develop malware, Microsoft gave the creators the ability to sign their applications. These digital signature certificates are double-checked and certified by services like VeriSign. Identified code would then run inside the web browser with full permissions .(In Java, user can put only partial trust in a program, while ActiveX requires either full trust or no trust at all.), meaning that any bug in the code was a

Madhuri Trivedi

potential security issue; this contrasts with the sandboxing already used in Java. Java applets, which perform many of the same functions as ActiveX controls, are heavily restricted as to how they interact with a user's PC. Java applets can't erase files from a user's hard drive because it uses "sandboxing ". ActiveX is not sandboxed at all. Once downloaded on a user's computer, the ActiveX control becomes part of the operating system with the ability of tampering with every piece of hardware and software on the machine.

167.    Microsoft didn't restricting ActiveX's functions, Every time Internet Explorer needs to download a new ActiveX control, it launches a pop-up window. It then asks the user if wants to proceed. Then user, has to decide whether the ActiveX control is legitimate or a Trojan Horse for nasty/malware code. Microsoft gave the creators the ability to sign their applications.

168.    **A "good" plug-in or Good ActiveX program can also hurt. By accepting an Active X program, user is trusting that the ActiveX program has no security-relevant bugs. As we have seen so many times, systems that are meant to be secure often have bugs that lead to security problems.** With ActiveX, this problem is made worse if you click the box which accepts all programs signed by the same person (for example, if user accepts anything signed by GE/Vendor). While one GE/vendor program may be secure, another one may have a security-relevant bug.

169.    This problem even applies to code written by own company for internal use aka GE written ActiveX. Once the plug-in or program is installed in user browser, an external attacker could write a Web page which used User's internal program ;bug passed  it OWN data which corrupted the program and took over USER's  machine.

170.    Trivedi suggested bandage-short term fix, security compromise and long term fix.

171.    At GE "InsiteEXC" RAViewer was required to establish remote connectivity and

1   many times online engineers/internal customers had to download/re-download it as per settings.

2       172.    GE architect Bill Barbiaux, architect Nate Davis, Lead systems designer Gregg

3   Stratton all three of them with with GE from 20 years, 30 years ,10 years respectively.

4   But None of three had any clue and were doing this from 2007, from 2009 and in 2012 received

5   plaintiff Trivedi's analysis and fidings....

6

7       173.    GE argument that they can't rebuild ActiveX with security update because ; they

8   bought huge chunk of InsiteEXC software/firmware code from company called "QUESTRA"

9   and Questra got bankrupt ; hence they don't have access to source code..So GE has to make new

10  connectivity platform from GROUND up…But Chris Hardimen-Program manager for GE

11  connectivity mentioned that it is not Questra gone out of business but GE's unwillingness to

12  spend some million dollars in fixing this..but GE bought Questra software in 2004 with major

13  update to that in 2007 and it was 2012 ; still they were sitting on pile of defects and cyber

14  security vulnerabilities; hoping and praying that nothing happens to their broken remote

15  connectivity platform while continuously & knowingly and after all this Trivedi talked—more

16  aggressively putting Insite on all kind of medical devices and selling it to customers

17  worldwide…

18

19

20      174.    Even in new platform development which was no way near the end for years to

21  come even though Trivedi reported ActiveX securities; GE continued at that point to USE

22  ActiveX. After I left GE may have DROPPED or may not..I am not SURE as I did arbitration so

23  ;GE might have taken it seriously or might not..

24

25      175.    GE's omission of facts pertaining to an actual, known risk could violate the

26

27

28

requirements of Regulation S-K Item 303 and Rule 10b-5. Thus, reporting an information security issue that contradicts or undermines the company's management discussion and analysis of cybersecurity could be protected under SOX.

176.    **Another example InsiteEXC sends health and diagnostics information from medical devices back to GE server. And on number of occasions; GE customers and online engineers contacted Trivedi directly as no one from front line support team was resolving their issues. As Trivedi got such a PANIC call where customer mentioned to TRIVEDI that MRI COIL temperature that medical device sends back to GE server–it was having issue ( this problem was consistent for more than six months to year) because that data is somewhere getting corrupted; 4 degree Celsius is showing 40 degree Celsius and vice versa. He was concerned as this could affect GE to address issues on MRI machine from SERVICE point of view.**

177.    **Trivedi mentioned this MRI customer call to her reporting manager David** Mehring and instead of addressing this David started continually harassing Trivedi and asking her to improve relationship skills.

178.    Plaintiff states that, to the best of her knowledge, "this false data related Insite2 has been reported "as accurate" by GE in wire communications such as the Internet.

179.    Plaintiff also allege that GE "knowingly failed to comply with its Business Code of Ethics, an internal control relied upon by both its auditors and shareholders," and that such failure "renders the signature of its Chairman of the Board and Chief Executive Officer on its annual report a violation of the Securities and Exchange Act and SOX.

180.    It also seems GE's failure to state on its Form DEF 14A filings anything related to

InsiteEXC may be an omission of material fact the disclosure of which would have made the proxy statements "not false or misleading." *Id.* § 240.14a-9(a). Thus, in complaining that relevant information did not appear in these SEC filings as required, Plaintiff allegedly implicates SEC rules violations.

181.    Trivedi has alleged "a strong inference of scienter" with respect to GE's failure to disclose..Trivedi has pleaded scienter adequately, satisfying statute requirement. Plaintiff Trivedi allege facts giving rise to a "strong inference that the GE acted with the required state of mind." *Id.* § 78u4(b)(2)(A). Trivedi has  "alleged facts (1) showing that the GE had both motive and opportunity to commit the fraud (2) GE 's action constituting strong circumstantial evidence of conscious misbehavior or recklessness."   Intent so GE can continue sale/ service contracts by not getting exposed to corporate credibility, loose their market share, sales, revenue and more".

182.    GE engaged into Several Deceptive Marketing practices

183.    **These INSITE EXC service contracts play a significant role in GE healthcare annual revenue ---** GE was negligent, lacked sense of urgency to correct this conduct or to report it to appropriate parties such as the FDA and its customers, government, investors because doing so would have adversely affected the large profit from service contracts' revenue and fraudulent inducement from sales of GE healthcare medical devices . This would have adversely affected company image in eyes of investors, and many other repercussions; would have significantly reduced or eliminated bonus compensation and other stock based compensation for GE executives to ensure that its officers would earn compensation related to economic performance, that stock options and other stock-based compensation would be maximized

1    …..and also GE would have impact on receiving government contracts such DOD and Veterans

2    Affairs hospitals and other public private purchase of medical devices and service contracts.

3        184.    Further disclosure of this fraudulent defective medical devices/remote service

4    would have significantly reduced GE's revenue and reputation . . ., and a wide range of related

5
6    conduct all based on fraudulent data and the failure to report this material information of medical

7    devices fraud and related cybersecurity RISK and VULNERABILITIES.

8        185.    GE had consistently reported/misled public and customers that InsiteEXC

9    **quality, HIPPA, HITECH, robust cyber security (EXHIBT 17 and insite brochure, various**

10   **medical device manuals) while intentionally concealing that InsiteEXC is NOT in**

11   **compliance FDA's <u>21 CFR § 820.90 - Nonconforming product</u>, product non conformances,**

12   **defects and cybersecurity vulnerabilities, aging platform that was falling apart and Scott**

13
14   **Erven's report.**

15       186.    <u>**Plaintiff allege from this statements that GE committed securities fraud in**</u>

16           <u>**violations of manipulative and deceptive devices 15 U.S. Code § 78j(b), SEC rule**</u>

17
18           <u>**10b(5) ,17 CFR § 240.10b-5 - Employment of manipulative and deceptive devices**</u>

19       187.    <u>**GE's above mentioned conduct with scienter , directly or indirectly made**</u>

20           <u>**untrue statements of material fact and omitted to state material facts necessary**</u>

21           <u>**in order to make the statements made, in light of the circumstances under which**</u>

22           <u>**they were made; harmed investors as they relied on false,misleading, untrue**</u>

23
24           <u>**statemetns GE made in order for them to make investment decision regarding**</u>

25           <u>**GE.**</u>

26

27

28

**SECOND CAUSE OF ACTION**

**FOR WHISTLEBLOWER RETALIATION UNDER DODD-FRANK ACT**

**18 U.S.C.§ 15 U.S.C. § 78u-6(h)**

**SEC Rule17 CFR § 240.21F-2**

188.    Plaintiff Trivedi incorporates by reference paragraphs 1 to 187 above, as though fully set forth herein, as well as facts currently unknown.

189.    *Protected Activity Need Not Describe an Actual Violation of the Law .*

*The SOX's legislative history indicates that the Accountability Act was implemented to address not only securities fraud (in the aftermath of financial scandals involving Enron, Worldcom, and Arthur Anderson),* **_but also corporate fraud generally. See S. Rep. No. 107-146, at 2 (May 2, 2002) ("This legislation aims to prevent and punish corporate and criminal fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions.")._**

*Sections 803, 804, and 807 of the Accountability Act address securities fraud specifically. But other sections address infractions that do not involve fraud against shareholders. Section 802 assesses criminal penalties upon persons who alter, destroy, conceal, or falsify records "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C.A. § 1519. And Section 805 instructs the United States Sentencing Commission to review sentencing guidelines to ensure that they include enhancements "for cases . . . in which the solvency or financial security of a substantial number of victims is endangered," and ensure that those*

1    *enhancements are "sufficient to punish and deter criminal misconduct by corporations."*

2    *S. Rep. No. 107-146, at 12-13.*

3

4

5    190.    Madhuri reported to her lead, manager David Mehring, senior manager Carl

6    Conrath, CEO Mike swinford, general manager david elario, HR manager Mike Truman and

7    later Mike Truman's place/role was taken by a new HR manager Ayesha Khan so to her,

8    architect Bill Barbiaux, architect nate davis, manager dave sallis, Chief financial officer ,

9    Program manager Nicole Boyle, CTO Tim kottak and few others. She did written

10   communication via emails, note memo, and personal meetings.

11

12

13   191.    Plaintiff  Trivedi did not need to specify which laws she thought were violated;

14   she needed only identify specific conduct she believed to be illegal. *See Ashmore v. CGI Grp.*

15   *Inc.,* No. 11 Civ. 8611(LBS), 2012 WL 2148899, at *6 (S.D.N.Y. June 12, 2012) (quoting *Welch*

16   *v. Chao,* 536 F.3d 269, 276 (4th Cir.2008)).

17

18   192.    GE once said it  is none of Trivedi's concern and later during last months and

19        Level I –alternate dispute process said that it was her job; but as below .

20

21   193.    *see Barker v. UBS AG, 888 F.Supp.2d 291, 297 (D.Conn.2012) (whether*

22        *plaintiff's activity was required by job description is irrelevant), and that Plaintiff*

23   *does not allege she specifically reported concerns of fraudulent and illegal activity, see*

24   *Ashmore, 2012 WL 2148899, at *6 (plaintiff's need not identify which law they believe*

25   *was broken, but need only identify conduct they believe to be illegal).*

26

27

28

*that it was part of Plaintiff's job to identify risk management issues, which is all she did*

*here, see Barker v. UBS AG, 888 F.Supp.2d 291, 297 (D.Conn.2012) (whether plaintiff's*

*activity was required by job description is irrelevant), and that Plaintiff does not allege*

*she specifically reported concerns of fraudulent and illegal activity, see Ashmore, 2012*

*WL 2148899, at \*6 (plaintiff's need not identify which law they believe was broken, but*

*need only identify conduct they believe to be illegal)*

194.    As per SEC brief filed in -DANIEL BERMAN v. NEO@OGILVY LLC and WPP

GROUP USA, INC., (Case no:- 14-4626  UNITED STATES COURT OF APPEALS FOR THE

SECOND CIRCUIT  )By providing new incentives and protections for individuals to engage in

whistleblowing activity, the Dodd-Frank whistleblower program enhances the existing securities-

law enforcement scheme, including internal company reporting………..Using its broad

rulemaking authority, the Commission adopted a rule clarifying that employment retaliation is

prohibited against individuals who engage in any of the whistleblowing activity described in

Section 21F(h)(1)(A)(iii)—including making internal reports at public companies of securities

fraud violations ….

195.    By continuously releasing even after Plaintiff raised and reported retaliation that

"Insite is defective" – GE continued releasing "InsiteEXC". 18 U.S. Code § 1343. Fraud by wire,

radio, or television -includes any writings, signs, signals, pictures or sounds transmitted by wire,

radio or television in interstate or foreign commerce.(EXHIBIT 17 GE product).

GE on

   ✓ it's website,

1    ✓  on internet,

2    ✓  youtube video ( https://www.youtube.com/watch?v=xUOw2A0t9vE  ) which was

3       uploaded to youtube on January 30,2013 touting instant connection, data protection,

4
         proactive monitoring, remote maintenance, system security,maximized up-time while
5
6       omitted defects;

7       **GE Healthcare**
        Published on Jan 30, 2013
8
9       **A service platform engineered for a fast, efficient response.**

10      GE has developed a unique technology which allows its service engineers to look into the heart of
11      any equipment linked by a broadband connection. From a distance they can examine the error log,
        check functioning of individual parts, and diagnose what actions are needed to fix the problem.
12

13   ✓  sales, marketing and while using product in hospitals product manuals concealed

14      InsiteEXC defect, cybersecurity vulnerabilities- **hence plaintiff allege that GE**
15
        **committed fraud.**
16
17      196.    Trivedi made disclosures that were required or protected under the Sarbanes-

18   Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities and Exchange Act of 1934, including

19   15 U.S.C. section 78j-1 (m), section 1513 (e) of title 18, and other laws, rules, or regulations

20   subject to the jurisdiction of the SEC.

21
        197.    Trivedi had both a subjectively and objectively reasonable belief that the conduct
22
23   being reported violated a listed law, rule, or regulation.

24      198.    GE including its CEO, CTO,CFO and others, knew or suspected that Trivedi

25   engaged in such protected activity.

26      199.    Trivedi was terminated after being framed to improved her relationship skills.
27
        200.    Trivedi's protected activity discussed above was a contributing factor—and
28

1    indeed the reason for—her termination.

2    201.    As a proximate result of GE's actions against Trivedi, as alleged above, Trivedi

3    has been harmed in that she has suffered the loss of wages, benefits, and additional amounts of

4    money she would have received if she had not been subjected to said treatment along with

5

6    immigration harm;H1 B visa, ability to get employment based greencard under _a person of

7    exceptional ability/advanced degree" where at GE her PERM with department of labor was

8    already approved but due to GE's illegal termination I 140 was never filed.. Trivedi has also

9    been harmed in that she has suffered humiliation, mental anguish, and emotional and physical
10
11   distress.

12

13                              **THIRD CAUSE OF ACTION**

14   **VIOLATIONS OF WHISTLEBLOWER PROTECTIONS UNDER SARBANES-OXLEY**

15                    **ACT 8 U.S.C. § 1514A, et seq.,  1514A(a)(1)**

16

17   202.    A Plaintiff Trivedi incorporates by reference paragraphs 1 to 201 above, as

18            though fully set forth herein, as well as facts currently unknown.
19

20
21   203.    SOX protects corporate whistleblowers for engaging in protected activities

22   includes wire fraud, mail fraud, healthcare fraud and a violation of any SEC rule or regulation.

23   204.    To be protected under SOX, the employee's report need not "definitively and

24            specifically" relate to one of the listed categories of fraud or securities violations in

25
     Section 806 of SOX.  The focus is "on the plaintiff's state of mind rather than on the defendant's
26
27   conduct." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 384 (2d Cir. 2008).

28

205.    Trivedi while employed at GE reported to management that GE is not adhering

following in regards to highly defective InsiteEXC medical device

✓ **21 CFR § 820.90 - Nonconforming product**

✓ **HIPAA 45 C.F.R. § 164.530 (g). HIPPA 164.306 Security standards:**

✓ HIPAA 45 C.F.R. §164.308(a)(1): Security Management Process

 - Implement security measures sufficient to reduce risks and vulnerabilities to a

reasonable and appropriate level to comply with § 164.306(a).

✓ **HIPPA 164.312(b) Technical safeguards – Standard: Audit controls**

   Audit controls refer to the capability to record and examine system activity.

✓ Security management process **HIPPA 164.308(a)(1)(ii) Information System**

**Activity Review –Required.** The company's security controls are seriously lacking

which is part of SOX internal controls.

✓ Medical devices are vulnerable to cybersecurity related ; hackable

✓ Lacks proper quality control, testing, automated static analysis of software/code for

InsiteEXC is not being used.

206.    Technical leads, architect and manager lack proper technical understanding, lack

technical knowledge, lack big picture /systems level , lack  cyber security knowledge.

207.    In FIRST and SECOND CAUSE OF ACTION; plaintiff alleged  violations of

SEC rules and regulations.

208.    *18 U.S.C.§ 1514A(a)(1), including when the employee provides information or*

*assistance to someone with "supervisory authority over the employee" or with*

*authority to "investigate, discover, or terminate misconduct"*

*as Plaintiff Trivedi did.*

209.

*as per Donaldson v. Severn Sav. Bank, F.S.B. Vanessa L. Donaldson brought a*

*SOX whistleblower action against her former employer, Severn Savings Bank ("Severn")*

*. [T]he federal criminal fraud statutes . . . prohibit the scheme to defraud .Materiality of*

*falsehood . . . was a common-law element of actionable fraud at the time these fraud*

*statutes were enacted and is an incorporated element of the mail fraud, wire fraud, and*

*bank fraud statutes. . . . But § 1514A carries no independent materiality element.*

*Consequently, Donaldson's objective belief need not be about a material matter, as*

*Severn has argued. Rather, her objective belief must be based on facts permitting an*

*inference that [the manager's] allegedly false representation was material to Severn's*

*course of conduct. The court found that Ms. Donaldson met this standard because the*

*manager's alleged inflation of the retail production figures was intended to, and likely*

*would, affect the size of a bonus awarded him by Severn.*

210.    Significantly, SOX protects internal disclosures.

211.    GE knew in July 2014 that I spoke with FBI and FBI said it is quitam.

212.    *As per  SEC. 1107. RETALIATION AGAINST INFORMANTS. (a) IN*

   *GENERAL---*

*Section 1513 of title 18, United States Code, is amended by adding at the end the*

*following:          ``(e) Whoever knowingly, with the intent to retaliate, takes any action*

*harmful to any person, including interference with the lawful employment or livelihood of*

*any person, for providing to a law enforcement officer any truthful information relating*

*to the commission or possible commission of any Federal offense*

213.    So when we were negotiating in 2014 and GE knew about Quitam ; even in violation of SEC. 1107. RETALIATION AGAINST INFORMANTS. (a) IN GENERAL—Section 1513 of title 18, United States Code, is amended as mentioned in above paragraph didn't give a damn to settle the employment and immigration matter with Trivedi/plaintiff nor made any public release about InsiteEXC

214.    It also seems GE's failure to state on its Form DEF 14A filings anything related to InsiteEXC may be an omission of material fact the disclosure of which would have made the proxy statements "not false or misleading." *Id.* § 240.14a-9(a). Thus, in complaining that relevant information did not appear in these SEC filings as required, Plaintiff allegedly implicates SEC rules violations; which are sufficient to state a plausible claim under SOX. Along with filings in 10-K, 8-K ,10-Q and violations of 15 U.S.C. § 7213(a)(2)(A)(iii)(III)a description, at a minimum, of material weaknesses in such internal controls, and of any material noncompliance found on the basis of such testing and  Sec¬tion 302 of SOX requires a corporation's CEO and CFO to personally certify the accuracy and completeness of financial reports, and they must assess and report on the effectiveness of internal controls around financial reporting.( 16 15 U.S.C. § 7241)

215.    Trivedi met SOX standard because the managers' and GE's alleged concealment of defects, deceptive sales and marketing of medical devices and services, fraudulent inducement, was intended to, and likely would, affect the revenue, profit, sales amount for GE; and bonus and executive pay/stock options to GE executives and pay to managers/employees.

1    Therefore Trivedi/plaintiff had an objectively reasonable belief that [the GE employees,

2    managers, GE executives and GE company were] engaged in a scheme to defraud government,

3    consumers, patients and investors and violating such laws."

4

5    216.    Plaintiff Trivedi made objective reasonableness," "subjective good faith," or a

6    disclosure that is "not knowingly false( WESTMAN & MODESITT, *supra* note 11, at 81; *see*

7    *also* Cherry, *supra* note 53, at 1047.  ) ; about GE allegedly fraud/such activities.

8    217.    Plaintiff (1)she engaged in <u>protected activity</u>;(2)the employer GE knew that she

9    engaged in the protected activity;(3)she suffered an <u>unfavorable personnel action</u>; and(4)the

10   protected activity was a <u>contributing factor in the unfavorable action</u>.

11

12   218.    **Plaintiff engaged in protected activity under SOX related to reporting**

13   **cybersecurity vulneralities** .GE took unfavorable personnel/professional action due to

14   plaintiff's protected behavior or conduct.

15

16

17   **FOURTH CAUSE OF ACTION**

18   <u>**45 CFR § 160.316 REFRAINING FROM INTIMIDATION OR RETALIATION**</u>

19   **45 CFR § 164.530(g) STANDARD: REFRAINING FROM INTIMIDATING OR**

20   **RETALIATORY ACTS**

21

22   219.    A Plaintiff Trivedi incorporates by reference paragraphs 1 to 218 above, as

23           though fully set forth herein, as well as facts currently unknown.

24

25

26

27

28

220.    *The new HITECH Act promises more rigorous enforcement of <u>HIPPA (Health Insurance Portability and Accountability Act of 1996)</u>. The legislation includes mandatory penalties for "willful neglect."*

221.    *Wisconsin W.S.A.§ 230.81. See 45 CFR 160.316 (precludes retaliation against persons opposing any act or practice made unlawful under the chapter).W.S.A. § 230.83.*

222.    *45 CFR 160.316 -A covered entity may not threaten, intimidate, coerce, harass, discriminate against, or take any other retaliatory action against any individual or other person for—(c) Opposing any act or practice made unlawful by this subchapter, provided the individual or person has a good faith belief that the practice opposed is unlawful, and the manner of opposition is reasonable and does not involve a disclosure of protected health information in violation of subpart E of part 164 of this subchapter.*

*[<u>71 FR 8424</u>, Feb. 16, 2006, as amended at <u>78 FR 5691</u>, Jan. 25, 2013 --- https://federalregister.gov/citation/78-FR-5691---*

*It is the responsibility of all [ORGANIZATION] employees to report perceived misconduct, including actual or potential violations of laws, regulations, policies, procedures, or [ORGANIZATION] [CODE OF CONDUCT].*

223.    David Mehring and Leads claimed that these issues were not her concern.  Ms. Trivedi pointed out, and their response was to penalize her for speaking up and not quietly falling in line and pretending that the problem did not exist; and join GE fraud scheme. Managers and leads did not care to provide enough time in project schedule.

224.    As alleged earlier 465 design nonconformance and defects in production software

of Insite Exc ; not in compliance with \*\*FDA guideline for Non-Conforming medical devices.

**21 CFR § 820.90** Subpart I--Nonconforming Product, *HIPPA 164.306 Security standards: General rules, HIPAA 45 C.F.R. §164.308(a)(1): Security Management Process*

*- Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level to comply with § 164.306(a), § 164.530 Administrative requirements.*

225.   <u>There were total 2000 bugs in defect database including 465 critical/design</u> <u>nonconformance. Which GE closed after I reported without doing anything-GE closed</u> <u>these defects in an hour in early 2013.</u>

Ms. Trivedi pointed out the missing audit trail /proper logging issue in

connectivity product design via email. Ms. Trivedi was retaliated against for pointing out contravention of code/law. HIPPA/HITECH law puts emphasis on proper **audit trail/logging**

**requirements;** *HIPPA 164.312(b) Technical safeguards – Standard: Audit controls Audit controls refer to the capability to record and examine system activity. Security management process HIPPA 164.308(a)(1)(ii) Information System Activity Review –Required.*

226.   At GE Technical leads, architect and manager lack proper technical understanding, lack technical knowledge, lack big picture /systems level, lack cyber security knowledge. Trivedi reported to management about this.GE was required to follow 45 CFR § 164.530 (b)(1) (1)Standard: Training and 45 CFR § 164.530 (b)(2) Implementation specific training.

227.   FDA halted sales of OEC in 2007 and GEHC signed a decree ;

(http://www.fdanews.com/articles/89160-ge-oec-medical-systems-signs-consent-decree-with-fda-to-correct-cgmp-lapses ) The decree "prohibits the manufacturing and distribution of specified GE OEC Medical Systems X-ray surgical imaging systems" at facilities in Salt Lake

City, Utah, and Lawrence, Mass., "until the devices and facilities have been shown to be in compliance" with the FDA's current good manufacturing practice (cGMP) requirements as set forth in the quality system regulation for devices, the agency said.

228. **Madhuri was putting quality at first and foremost in her day to day duties given the history of surgery product with FDA as she was integrating InsiteEXC on OEC surgery (above Decree related medical device).**

229. **Internal customers such as General manager Arthur Larson and director Nick Allen** has expressed serious concerns about reliability and quality of GST delivered products.

230. **Under HIPPA requirement** which is "it is responsibility of all employees of organization to report perceived misconduct, including actual or potential violations of laws, regulations, policies, procedures" and employer not threaten, intimidate, coerce, harass, discriminate against, or take any other retaliatory action against any individual or other person"

231. 18 U.S. Code § 1345. Injunctions against fraud

232. Despite doing such good work; manager Dave Mehring and leads shifted blame on to Ms.Trivedi( **Ms. Trivedi's inclusiveness** ) and retaliated. Leads were not held accountable for their negligence. Madhuri was subjected to continuing abuse from her co-workers, manager including verbal abuse, sexual comments, immigration retaliation, withdrawal of H1 B, vengeance to destroy her stellar career.

233. **Madhuri as under HIPPA, HITECH requirement did her job to address, bring to attention to people in authority and report such perceived misconduct, including actual or potential violations of laws, regulations, policies, procedures. As a result of that**

1  she was threatened to be taken off the job, intimidated, harassed, and discriminate against,

2  retaliatory action to punish her by giving poor performance evaluation (EXHIBIT 10)and

3  finally discharged.

4

5

6  **FIFTH CAUSE OF ACTION**

7  <u>**FOR DISPARATE TREATMENT IN VIOLATION OF TITLE VII OF THE CIVIL**</u>

8  <u>**RIGHTS ACT INCLUDING RETALIATION**</u>

9  VIOLATIONS OF CIVIL RIGHTS ACT OF 1991 42 U.S.C. § 2000e-3a

10

11  234.    A Plaintiff Trivedi incorporates by reference paragraphs 1 to 233 above, as

12  though fully set forth herein, as well as facts currently unknown.

13

14

15  235.    42 USC § 2000e-2(a)(1) to <u>discharge</u> any individual, or otherwise to discriminate

16  against any individual with respect to his <u>compensation</u>, terms, conditions, or privileges of

17  employment, because of such individual's race, color, <u>religion</u>, sex, or national origin; or

18  236.    42 USC § 2000e-3(a) where I did clearly opposed employment practices by GE

19  and suffered discrimination.

20

21  237.    As a direct, foreseeable, and proximate result of defendants' discriminatory acts,

22  Plaintiff has suffered and continues to suffer substantial losses in earnings and job benefits, and

23  has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress,

24  and discomfort, all to Plaintiff's damages.

25  238.    Because the acts taken toward Plaintiff were carried out by, condoned by and or

26  ratified by managerial employees or managing agents acting in a deliberate, cold, callous,

27

28  fraudulent, malicious, oppressive, and intentional manner in order to injure and damage Plaintiff,

while other engineers including Male technical staff Sachin Kendale (Sachin wrote code that it took 40 minutes to lead 1000 devices on webpage and he and Naresh wrote such badly and defectively by initializing each device object in memory after they get query result from database. Database was also not tuned and written badly. They never used Database performance management tool and David Mehring sucked so much of my blood and I had to convince him a lot to get $30 Database management tool (EXHIBIT 27 perjury)because GE didn't have license and these incompetent engineers never used—despite that Sachin got good performance review---

239.    Plaintiff has a copy of Sachin's performance review and can submit to court), Naresh, Nate Davis, Greg Stratton and several others wrote bad product, bad buggy, defective software/code( I have proof of that) despite GE treated them favorably and discriminated plaintiff as GE can't tolerate , a female engineer coming out strong and also whistleblowing these male engineers technical incompetence.

240.    Mike harsh , CTO of GEHC sent email in late 2012 (EXHIBIT 18) that managers and employees should take training on how they perceive communication from female engineers; SO GE had problem about perceiving and measuring performance, communication of female engineers

> *"Men's and women's behavior is based on two different sets of cultural rules about what " right" is . Learning the cultural differences define what is "right" for men and women-together with a good sense of humor –is the first step leading meaningful inter-gender communication.*

*Following the workshops, participants will be equipped to return to both their*

*professional and personal lives seeing the world through the lenses of the other*

*gender's culture and encouraged to shape their message in new ways. "*

241.    There was one female project lead Dipti Patel who was responsible for integrating InsiteEXC on various medical devices and she fraudulent and knowingly PASSED quality tests and signed them saying product is OKAY while it was defective and whole management was part of this FRAUD scheme in which one female project lead was there. Dipti Patel terrorized me but it was that she was getting exposed of fraud.

242.    Madhuri is victim being a female engineer from India and working for a large organization whose managers took advantage of these conditions/systems and systematically worked on discriminating, retaliating and treating Madhuri badly, giving false negative evaluation and finally getting rid of her, beating her about soft skills and continuously making false  case, comments , character attacks, using such inappropriate tactics, selectively filtering most of positive things about her,  stopping her from fixing defects, doing proper design for which Madhuri was hired and paid to do. Madhuri told Dave Mehring in 1on1 and also to Carl Conrath and Mike Truman, Ayesh Khanalong with CEO Mike Swinford, CFO,  that she is treated differently and unfavorably.

243.    Once Madhuri realized amount of defects and performance/maintenance issues Insite Exc was having which was violation of FDA rule, quality code, HIPPA and HITECH violations and risk to public health and safety –patient data; it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC for example (where Madhuri was doing testing). Given it is regulated environment and Madhuri was concerned to continue work on Insite Exc surgery integration in a reckless way manager/lead

1  wanted. Madhuri informed managers  Dave Mehring/ Dave Saliis that she would consider

2  working on another project and this is not proper. This happened in March 2012.

3

4      244.    Despite those similarly situated employees who are not in Ms. Trivedi's protected

5  group were doing such poor job were treated more favorably or did not receive the same adverse

6  treatment. (Madhuri needs to work on her relationship despite doing good work for company and

7  going above and beyond for project success).

8      245.    A plaintiff may state a claim for Title VII employment discrimination using either

9

10  the "direct method" or "indirect method." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-728 (7th

11  Cir. 1998).

12      246.    My email to CTO Tim Kottak. I met Tim in person and went over everything .I

13        requested Tim to change my reporting manager.

14

15

16

| **From:** | Trivedi, Madhuri (GE Healthcare) </o=GEMAIL/ou=First Administrative Group/cn=Recipients/cn=212070205> |
| **Sent:** | Wednesday, December 19, 2012 2:03 PM |
| **To:** | *Kottak*, Tim (GE Healthcare) <Tim.*Kottak*@med.ge.com> |
| **Subject:** | RE: Thanks |

---

Respected Tim *Kottak*,

Carl said he won't make any changes for having a dotted line manager. This is an update.
Happy Holidays!

Thanks and regards,

Madhuri

26      247.    My email to Gregg stratton(who was a lead systems designer )for Insite EXC

where I reiterated cybersecurity issues, slacker way for quality(EXHIBIT 25), as was being exposed of technically incompetent and fraud related to InsiteEXC became aggressive, abusive language, behavior, shifting blame and daily fights via emails phones to other GE managers and I was sitting next to him..I moved my desk and GE manager david mehring made a big issue of it..gave me negative rating in performance review regarding my desk move and forced me to have regular meeting with Greg to improve relationship…

248.   Used my divorce as a tool to falsely accuse me on relationship, blackmailing as GE thought it as my weakness. Pre arbitration brief (exhibit 14), immigration attorney Jeff letter to GE CEO (exhibit 12 ), Foley and Mansfield letter to GE(exhibit 15), my arbitration agreement (exhibit 4)has outlined the disparate treatment I received and retaliation. These exhibits are realleged and incorporated here in as part of this CAUSE of ACTION.

249.   I was discriminated , retaliated based on her nationality- as it relates to immigration status H1B. Because once GE takes adverse, discriminatory action and terminates me –they can cancel my H1 B-after H1 B cancellation. That's what GE exactly did. Compared to others who were not on H1B and not similarly situated ( plus I didn't keep my mouth shut and joined GE's fraud scheme).

250.   Title VII also has protection for anti-retaliation –when a person complains about desperate treatment despite GE retaliated…Plaintiff was concerns about her H1B and hence trying to be polite and as adjustable to GE as she can as long as her H1 B is not screwed.

**SIXTH CAUSE OF ACTION**

## 10 U.S.C. 2409 "WHISTLEBLOWER PROTECTIONS FOR CONTRACTOR EMPLOYEES.", NDDA

251.    A Plaintiff Trivedi incorporates by reference paragraphs 1 to 250 above, as though fully set forth herein, as well as facts currently unknown.

252.    Plaintiff has exhausted administrative remedies for the DODIG complaint, and the employee **may** bring an action against the defense contractor GE in the appropriate U.S. District Court.

253.    I am *Alleging reprisal under (10 U.S.C. 2409)*, and also alleging GE violations under NDDA criminal fraud investigation.

254.    *(10 U.S.C. 2409) (a)Prohibition of Reprisals.— (1) An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of the following:*

*10 U.S.C. 2409( a) (1) (A) Gross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related to a Department contract (including the competition for or negotiation of a contract) or grant.*

*10 U.S.C. 2409( a) (1)  (C) A substantial and specific danger to public health or safety.*

255.    Madhuri Trivedi plaintiff alleged that management officials terminated her employment in reprisal for making protected disclosures; also as per *10 U.S.C. 2409( a) (1) (A) and 10 U.S.C. 2409( a) (1) (C) A substantial and specific danger to public health or safety.*

256.    During her employment and thereafter during arbitration on several occasions , Ms.Trivedi made management know by in person meetings, emails and later legal documents that she was retaliated for making protected disclosure to management of GE healthcare ( 10 U.S.C. 2409(a)(2) (G) A management official or other employee of the <u>contractor</u> or subcontractor who has the responsibility to investigate, discover, or address misconduct. )

257.    Madhuri already reported to GE supervisory management as per 10 U.S.C. 2409( a) (2)(G). And given arbitration substitutes court or grand jury ; I raised these in my arbitration as well as per 10 U.S.C. 2409( a) (2) (F) A <u>court</u> or grand jury.

258.    DOD signed service contract for GE medical devices that used/included "Insite EXC" medical device/remote service product. *<u>10 USC § 2409(g)(3)</u> The term "<u>contract</u>" means a <u>contract</u> awarded by the <u>head of an agency</u>.*

259.    **GE did violate *10 U.S.C.2409( a) (1) (A) and 10 U.S.C. 2409( a) (1)(C )as stated below-***

✓ **Gross mismanagement of a federal contract or grant**, which is "a management action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission." Kavanagh v. Merit Systems Protection Board, 176 F. App'x 133, 135 (Fed. Cir. April 10, 2006) (citing White v. Department of the Air Force, 63 M.S.P.R. 90, 95 (1994));

✓ **An abuse of authority relating to a federal contract or grant**, which is "an arbitrary or capricious exercise of power … that adversely affects the rights of any person or that results in personal gain or advantage to … preferred other persons." Doyle v. Department of Veterans Affairs, 273 F. App'x 961, 964 (Fed. Cir. April 11, 2008) (quoting Embree v. Department of the Treasury, 70 M.S.P.R. 79, 85 (1996)); or

✓ **A "substantial and specific danger to public health or safety"** (alleging the nature and likelihood of the harm, as well as when the harm may occur), or a "violation of law, rule or regulation" related to a federal contract. See Chambers, 515 F.3d at 1367, 1369.

260.   **GE made no real effort to notify employees including Madhuri Trivedi as per**
*10 U.S.C. 2409 (d)*

261.   Plaintiff Trivedi didn't know of her right under this act (I did know that it is illegal under DOD contract terms but didn't know specific laws, statutes and administrative process with DOD IG)

Means she was not aware of her rights to file administrative complaint until it was little over/after three years and going to federal court )until after she was terminated (even after she was terminated, it took her sometime to know this act).

262.   But GE knew this act (and GE knowingly let plaintiff suffer damages in violations of this act) and so did several law firm attorneys Trivedi retained to represent her but as alleged earlier none of the attorney mentioned to Trivedi about filing DOD IG reprisal complaint. …So they schemed that if plaintiff doesn't know her right. GE thought that they won't get caught hence it justified their illegal activities as being BIG corporation with DEEP POCKETS, connections, lobbying power and huge money for legal defense and dragging the matter so to exhaust other party who is whistleblowing.

263.   The complainant Trivedi prevails merely by demonstrating that the protected disclosure was a contributing factor in the personnel action, which can be met by showing knowledge and temporal proximity.

264.   I filed complaint to DOD IG on August 19, 2016 but first DOD investigator said that a person should be a US citizen. Later when I spoke with Nilgun Tolek –Director of investigations–she said no need to be US citizen but it was closed as three year statute of limitation to report to DOD IG ran out as I contacted on August 19,2016 and I was terminated on May 31, 2016…Though It was just few months more than three years but anyway she didn't consider.

265.   **DOD IG also had whistleblower criminal investigation and it was properly filed** ( I also had emails from head of DOD IG handling criminal investigation but I have no update on that and more than 210 days have passed after filing the complaint….so federal court has jurisdiction to hear the case under NDDA.

266.   Below is Patrick DOD IG email.

1)From: **Gookin, Patrick, OIG DoD** <Patrick.Gookin@dodig.mil>

Date: Thu, Sep 8, 2016 at 2:12 PM

Subject: RE: [Non-DoD Source] Fwd: Department Of Defense, Office of the Inspector General - Initial contact

To: Madhuri Trivedi <madhuri.orangehc@gmail.com>

We will ask the investigator assigned to fraud to contact you.  They may want you to submit it in some other manner.

Patrick W. Gookin

Director, DoD Hotline and Whistleblower Protection Ombuds  (703) 602-0036

Madhuri Trivedi

2)From: **Gookin, Patrick, OIG DoD** <Patrick.Gookin@dodig.mil>

Date: Thu, Sep 8, 2016 at 11:51 AM

Subject: RE: [Non-DoD Source] Fwd: Department Of Defense, Office of the Inspector

General Reprisal complaint

To: Madhuri Trivedi , "Tolek, Nilgun, OIG DoD" <nilgun.tolek@dodig.mil>

Nilgun Tolek and Ian Odette only spoke to your complaint of reprisal, not

whether the government was defrauded.  The fraud matter is overseen by the DoD

Hotline.  Please don't assume nothing is being done about your fraud

complaint.  We have it for action.

Patrick W. Gookin

Director, DoD Hotline and Whistleblower Protection Ombuds

(703) 602-0036

Office of the Inspector General

U.S. Department of Defense  4800 Mark Center Drive, Suite 14L24 Alexandria, VA

22350-1500

3)From: **O'Reilly, Dermot F., SES, OIG DoD** <Dermot.O'Reilly@dodig.mil>

Date: Tue, Nov 1, 2016 at 9:35 AMSubject: Re: [Non-DoD Source]

*******************

To: Madhuri Trivedi <madhuri.orangehc@gmail.com>, "Stebbins, Steven A., SES, OIG

DoD" <Steven.Stebbins@dodig.mil>

## SEVENTH CAUSE OF ACTION

## VIOLATION OF DODD FRANK ACT - SECTION 1057, CONSUMER FINANCIAL PROTECTION ACT (CFPA) , 12 U.S.C. 5567 EMPLOYEE PROTECTION

267.    A Plaintiff Trivedi incorporates by reference paragraphs 1 to 266  above, as though fully set forth herein, as well as facts currently unknown.

268.    As stated in GE 10-K filings:-

" Under the Dodd-Frank Wall Street Reform and Consumer Protection Act, we are subject to prudential oversight by the Federal Reserve, as a result of GE Capital's designation as a nonbank systemically important financial institution (nonbank SIFI), which subjects us to increased and evolving regulatory requirements. General Electric **Capital** Corporation **(GECC)** is a regulated savings and loan holding company under U.S. law and became  subject to Federal Reserve Board (FRB) supervision on July 21, 2011, the one-year anniversary of the Dodd-Frank Wall Street Reform and Consumer Protection Act(DFA). In addition, on July 8, 2013, the U.S. Financial Stability Oversight Council (FSOC) designated GECC as a nonbank systemically important financial institution (nonbank SIFI) under the DFA. "

269.    10-K for GENERAL ELECTRIC CO

Capital
Capital is the financial services division of GE focused on customers and markets aligned with GE's industrial businesses, whether in developed economies or emerging markets. We provide financial products and services around the globe, that are geared to utilize GE's industry specific expertise in aviation, energy, infrastructure, and healthcare to capitalize on market-specific opportunities. In addition, we continue to operate our run-off insurance activities as part of our continuing operations.

(a) Revenues of GE businesses include income from sales of goods and services to customers and other income.

1

2

      (b) Sales from one component to another generally are priced at equivalent commercial selling prices.

3

270.    GE's deceptive sales and marketing –would consumers have leased or loaned GE

4

medical equipment and services at the PRICE and CONDITIONS GE offered; if consumers

5

would have known defects, non conformances and cyber security vulnerabilities?

6

7

271.    GE capital –healthcare finance offerings as shown below:

8

9

10



11

12

**Products and Services:**

- Custom Fair Market Value Leases
- Equipment Loans
- Tax Exempt Revenue Bonds
- Taxable Revenue Bonds
- Technology Management

**Markets served:**

- Hospitals & Health Systems
- Outpatient Imaging Centers
- Outpatient Surgery Centers
- Physician Practices & Outpatient Clinics
- Diagnostic Laboratories
- Urgent Care Clinics
- Skilled Nursing Facilities
- Other Healthcare Providers

**Equipment commonly financed:**

- Advanced Visualization
- Anesthesia Delivery
- Bone Health
- Computed Tomography (CT)
- Diagnostic ECG
- Diagnostic Laboratory Equipment
- EP Recording
- Furniture & Fixtures
- Healthcare IT
- Hospital beds
- Interventional
- Magnetic Resonance (MR)
- Mammography
- Maternal-Infant Care
- Molecular Imaging
- Nuclear Medicine
- Patient Monitoring
- PET/CT
- Radiography and Fluoroscopy
- Surgical Imaging & Technology
- Surgical Robots
- Ultrasound
- Ventilators

13

14

15

16

17

18

19

20

21

22

23

272.    <u>**Solutions offered by GE capital-**</u>

24

25

26

27

28

           Madhuri Trivedi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Providers are trying to adapt to a rapidly changing healthcare environment. Each has their own set of unique challenges and opportunities, including where they are and where they want to be. GE Healthcare Equipment Finance offers a breadth of solutions to help customers address their varied needs and goals—solutions that are also tied to clinical and operational roots of the organization so they are robust enough for long-term support.

## Traditional acquisition models

In an era of uncertainty, it can be difficult for organizations to develop financial and operational strategies with the flexibility to adjust to internal and external market forces. Leasing can deliver that flexibility to manage assets, right-size capacity and drive standardization or utilization so providers can adapt to changes in reimbursement, industry consolidations, and innovations in technology.

## Metric-based

Risk-sharing models offer providers the flexibility to expand and grow while addressing uncertainty regarding demand, reimbursement, and technology. Usage Based Billing (UBB) is an ideal solution for providers seeking to add new imaging technology yet uncertain that demand will support expansion. Reimbursement Based Billing (RBB) can enable increased capacity for procedures that have an uncertain reimbursement rate.

## Portfolio optimization and management

When demand and reimbursement are less predictable, it becomes more important for providers to have a strategic assessment of existing assets. We help organizations create a technology management plan that is aligned with clinical, operational, and financial goals. With a full assessment of asset optimization and capital planning efficiency, we can help healthcare systems reduce operational costs.

## Technology management

Some customers seek a holistic approach to technology management and financing. As experts in healthcare and finance, we can incorporate technology service, healthcare expertise, and finance in a way that helps manage technology obsolescence and lock in predictable cost structures. We can work closely with customers to understand their clinical, operational, and financial goals to help improve clinical efficacy and drive consistency through standardization and asset optimization.

## Common financing products

- Custom Fair Market Value Leases
- Tax Exempt Equipment Loans
- Taxable Revenue Bonds
- Technology Management Solutions
- Equipment Loans
- Tax Exempt Revenue Bonds

23
24
25
26
27

273.    GE Capital's verticals are aligned with GE's core industrial businesses – GE

Capital  Aviation Services (GECAS), Energy Financial Services (EFS) and GE

28

1   Industrial Finance, which include the Healthcare Equipment Finance business, Working Capital

2   Solutions (WCS), and other financing activities to develop lending and leasing products for the

3   GE Store.

4

5       274.   GE Capital's Industrial Finance organization serves customers in Healthcare in

6           USA and around the world.

7

8       275.   *. See 12 U.S.C. 5567(a) (listing activities protected under CFPA).Claims arising*

9           *under section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection*

10          *12 U.S.C. 5567(a) 12 U.S.C. 5567(a)*

11  *(a) In general No covered person or service provider shall terminate or in any other way*

12  *discriminate against, or cause to be terminated or discriminated against, any covered*

13  *employee or any authorized representative of covered employees by reason of the fact*

14  *that such employee or representative, whether at the initiative of the employee or in the*

15  *ordinary course of the duties of the employee (or any person acting pursuant to a request*

16

17  *of the employee), has—*

18  *(1) provided, caused to be provided, or is about to provide or cause to be provided,*

19  *information to the employer, the Bureau, or any other State, local, or Federal,*

20  *government authority or law enforcement agency relating to any violation of, or any act*

21  *or omission that the employee reasonably believes to be a violation of, any provision of*

22  *this title [1] or any other provision of law that is subject to the jurisdiction of the Bureau,*

23  *or any rule, order, standard, or prohibition prescribed by the Bureau;*

24

25  *……*

26  *(4) objected to, or refused to participate in, any activity, policy, practice, or assigned*

27  *task that the employee (or other such person) reasonably believed to be in violation of*

28

*any law, rule, order, standard, or prohibition, subject to the jurisdiction of, or*

*enforceable by, the Bureau.*

*(b) Definition of covered employee -For the purposes of this section, the term "covered*

*employee" means any individual performing tasks related to the offering or provision of*

*a consumer financial product or service.*

276.    As per 12 U.S.C. 5567 (b), which imposes no requirement that information be

conveyed to a government agency, no requirement to report to government agency in order to get

whistleblower protection.

*12 U.S. Code § 5536. Prohibited acts (a) In generalIt shall be unlawful for—*

*(1) any covered person or service provider—(A) to offer or provide to a consumer any*

*financial product or service not in conformity with Federal consumer financial law, or*

*otherwise commit any act or omission in violation of a Federal consumer financial law;*

*or(B) to engage in any unfair, deceptive, or abusive act or practice;*

*(3) any person to knowingly or recklessly provide substantial assistance to a covered*

*person or service provider in violation of the provisions of section 5531 of this title, or*

*any rule or order issued thereunder, and notwithstanding any provision of this title,[1]*

*the provider of such substantial assistance shall be deemed to be in violation of that*

*section to the same extent as the person to whom such assistance is provided.*

277.    By deceptive, fraudulent marketing, sales, leasing, lending and financing GE

medical devices through GE capital; GE was violating  laws. The Consumer Financial

Protection Bureau oversees GE capital. GE Capital has GE Healthcare Equipment

Finance . Hence by engaging in all the activities Plaintiff Trivedi did to report to GE

Madhuri Trivedi

management internally about alleged violations that CFPB oversees.; Trivedi is a "covered employee" as per *12 U.S.C. 5567(b)*

278.    Trivedi as per 12 U.S.C. 5567(a)(4) and 12 U.S.C. 5567(a)(1) objected and refused to participate in GE fraud scheme to release defective, non conforming, Cyber security vulnerabilities, hackable medical devices and service products, related activities to 100,000 medical devices in PRODUCTION inside HOSPITALS and reported her objections and such illegal activities to employer GE as per 12 U.S.C. 5567(a)(1);

279.    Trivedi reasonably believed to be in violation of law, rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by, the Bureau -    12 U.S. Code § 5536(a)

280.    Even when Trivedi was assigned task to integrate InsiteEXC on Surgery platform; Trivedi's assigned task that Trivedi reasonably believed to be in violation of law, rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by, the Bureau. 12 U.S. Code § 5536(a)

281.    Other finance related rules and regulations, statutes, state laws may apply to GE's loan, lease, tax bond and related activity for it's healthcare equipment finance; the matter should looked into holistically.

282.    Plaintiff did file OSHA complain (EXHIBIT 6 & 7)

## EIGHTH CAUSE OF ACTION

### 8 U.S.C.§1324b(a)(1),  8U.S.C. § 1324b (a)(5)

## PROHIBITION OF INTIMIDATION OR RETALIATION

283.    A Plaintiff Trivedi incorporates by reference paragraphs 1 to 282 above, as though fully set forth herein, as well as facts currently unknown.

284.    Above cause of action prohibits employer to retaliate, discrimination based on nationality, immigration status as person(employee) who objects any unlawful practices, acts done by employer. Even while mediation, arbitration was pending, GE cancelled her H1 which is also to prohibit her from pursing her claims under this and also to scare her off in terms of her immigration.

285.    *8 U.S.C.§1324b(a) Prohibition of discrimination based on national origin or citizenship status (1) General rule It is an unfair immigration-related employment practice for a person or other entity to discriminate against any individual (other than an unauthorized alien, as defined in section 1324a(h)(3) of this title) with respect to the hiring, or recruitment or referral for a fee, of the individual for employment or the discharging of the individual from employment—*

*(A) because of such individual's national origin, or*

*(B) in the case of a protected individual (as defined in paragraph (3)), because of such individual's citizenship status.*

286.    *As per 8U.S.C. § 1324b (a)(5)- It is also an unfair immigration-related employment practice for a person or other entity to intimidate, threaten, coerce, or retaliate against any individual for the purpose of interfering with any right or privilege secured under this section or because the individual intends to file or has*

1    *filed a charge or a complaint, testified, assisted, or participated in any manner in an*

2    *investigation, proceeding, or hearing under this section.*

3    287.    **While employed at GE, even as I emailed GE HR and GE immigration**

4    **attorney(EXHIBIT 11) that GE is violating immigration laws and atthat time I did**

5    **INTEND to take action/file complain.**

6

7    288.    **As alleged earlier –plaintiff has stated claims under this cause of action. As**

8    **plaintiff was discriminated and further retaliated, discharged in violations of *8***

9    ***U.S.C.§1324b(a)*based on her by her former employer GE**

10   ✓   **nationality -8 U.S.C.§1324b(a)(1)(A),**

11   ✓   **immigration, citizenship status (8 U.S.C.§1324b(a)(1)(B)**

12

13

14

15   **NINTH CAUSE OF ACTION**

16

17   **BREACH OF CONTRACT**

18   **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

19

20   289.    A Plaintiff Trivedi incorporates by reference paragraphs 1 to 288 above, as

21   though fully set forth herein, as well as facts currently unknown.

22   290.    Covenant-of-good-faith that terminations made in bad faith or motivated by

23   malice are prohibited. That's what exactly GE did- terminated plaintiff Trivedi in bad faith and

24   was motivated by malice, conspiracy as she didn't participate in GE fraud scheme, opposed and

25   spoke up.

26   291.    Other common-law limitations including actions based on the (1)intentional

27

28                  Madhuri Trivedi

infliction of emotional distress, (2)intentional interference with a contract applies to Plaintiff Trivedi's case.

292.    GE is required by SEC rule to include code of business conduct and ethics including in its Annual report form. And comply with it. **17 CFR § 229.406 -Code of ethics.**

293.    **A.  Rules enacted by the major stock exchange NYSE**

The NYSE requires each publicly traded company to publish a Code of Business Conduct and Ethics promising not to retaliate against employees.

294.    GE is a publicly traded company –on NYSE stock exchange.

295.    First, the stock ex-changes, NYSE require their listing issuers to adopt a Code that applies to all employees.  Second, the Code must provide for an enforcement mechanism to encourage prompt, internal reporting of violations of the Code.( *See* NYSE LISTING MANUAL § 303A.10) .The NYSE listing requirements specifically mandate that the Code include corporate assurances that it will not retaliate against an employee for reporting violations of the Code(*See* NYSE LISTING MANUAL § 303A.10);NYSE requires that companies protect employees who make reports in "good faith,"

> *( See NYSE LISTING MANUAL § 303A.10 )****Encouraging the reporting of any illegal or unethical behavior.*** *The listed company should proactively promote ethical behavior. The listed company should encourage employees to talk to supervisors, managers or other appropriate personnel when in doubt about the best course of action in a particular situation. Additionally, employees should report violations of laws, rules, regulations or the code of business conduct to appropriate personnel. To encourage employees to report such violations, the listed company must ensure that employees know that the listed company will not allow retaliation for reports made in good faith.*

NOTE:General policies about whistleblowing are not enough; these corporate governance

standards require *promises* not to retaliate (In the context of attempting to provide contractual

protection against sexual orientation discrimination, Ian Ayres and Jennifer Gerarda Brown note

the importance of obtaining contractual promises of nondiscrimination rather than merely

unenforceable nondiscrimination policies.  ).

296.   **The NYSE listing rules require GE to promise broad whistleblower**

**protection;** protect employees/plaintiff Trivedi who made whistleblower disclosures

in "good faith,", fair dealing as well.

297.   **B. Plaintiff Trivedi signed as a condition of employment at the time of joining**

**GE(EXHIBIT 28 & EXHIBIT 29 ) GE policies-The Spirit and the letter**

The Spirit and the letter  ( letter is also part of SEC filing DEF 14A)( also available on GE

website)— it states that *"You do not need to be certain that a violation has occurred. At the*

*same time, you have an obligation to promptly raise a concern when you see a situation in which*

*our integrity principles or policies are not being followed. "*

*"RESPONSIBILITIES OF EMPLOYEES*

- ✓ *Know and comply with the laws and regulatory requirements that affect your job*
  *responsibilities.*
- ✓ *Be the Voice of Integrity and promptly escalate any potential issues that may lead to a*
  *regulatory compliance breach."*

**NOTE- GE has itself done so much fraud, scandals, cooked account books and more**

that these policies spirit. Policy Letter is merely a letter new employee required to read and sign

and follow but company itself is not following.

298.    Because a corporate Code always applies to the company GE and its employees (plaintiff Trivedi), enforcing a Code promise often avoids a debate about whether a worker-plaintiff Trivedi is a "covered employee." The anti-retaliation promise contained in GE corporate Code protects employees (plaintiff Trivedi) as a covered employee. GE Corporate Code, on the other hand, also promised to protect an employee who discloses *any* illegal or unethical activity occurring within the corporation; hence such claims to go forward under a breach of contract theory based on the employer GE 's anti-retaliation policy as it stated on **GE policies-The Spirit and the letter** page 13 "GE absolutely prohibits retaliation".

299.    **C. Plaintiff Trivedi fulfilled her "Duty to Report Violations,"** which stated in GE policies: The spirit and the letter(SEC filing DEF 14A):*" Penalties for violations >>Employees and leaders who violate the spirit or letter of GE's policies are subject to disciplinary action up to and including termination of employment. Misconduct that may result in discipline includes: • Violating GE policy, Failure to promptly raise a known or suspected violation of GE policy , Retaliation against another, employee for reporting an integrity concern,• Failure to demonstrate leadership and diligence to ensure compliance with GE policies and law.*

300.    *GE SEC filing DEF 14A-Code of Conduct. All directors, officers and employees of GE must act ethically at all times and in accordance with the policies comprising GE's code of conduct set forth in the company's integrity policy, The Spirit & The Letter, which is published on GE's website at www.ge.com/files/usa/citizenship/pdf/english.pdf.*

301.    GE's Anti-retaliation Promise as an Express Contract as well==also answer to

GE's defense that it was at-will employment.

302.    **These anti-retaliation protections supersede any private ordering between parties GE and plaintiff Trivedi, including an at-will arrangement, that would permit an employer GE to fire or otherwise retaliate against a plaintiff Trivedi for reporting misconduct.**

303.    **D. Implied contract**

304.    Plaintiff had an implied contract of employment for so long as Plaintiff performed Plaintiff's job in a satisfactory manner.

305.    Trivedi performed her job in a satisfactory manner. Even in her performance appraisal(EXHIBIT 10) –GE manager rated her performance as "meeting expectations" but made up that it is her communication skills, relationship skills which needs to be improved and as a result of PRETENSE/made up false/retaliatory.

306.    **E. GE made Good faith implied job contract that GE will do H1, yearly extension of H1 and  her greencard**

As plaintiff was on her sixth year of H1B..After SIXTH year on H1B unless employer timely files greencard paperwork ,H1 B can't be extended nor can one work for another employer/change job..That's what exactly GE did.

307.    Also despite several requests during mediation, a arbitration and a letter to CEO of GEHC by immigration attorney Jeff Goldman(EXHIBIT 12) –GE didn't file I 140 which would have allowed her to extend her H1B and leave GE and work for another employer.

308.    We requested at that time that GE keep me on leave without pay and just do

paperwork. But GE didn't care. It is also illegal to cancel H1 B while mediation and arbitration is

pending because without H1 B I had no way to be in country legally which was a weakness –GE

and arbitrator used that (H1 B cancellation ) **(EXHIBIT 12)**as tools.

309.    Defendant breached its contract with Plaintiff by: Terminating Plaintiff in breach

of the promises made to Plaintiff; terminating plaintiff in violations of public policy ,state and

federal statutes, regulatory agencies including but not limited to DOD, FDA, SEC, DOL rules

and regulations. Also in violation of all other anti-retaliation, whistleblower protection laws

.Cause of action claim -----stated here. Terminating Plaintiff without good cause as she did meet

her performance (technical performance as well) (EXHIBIT 10)

310.    The company induced Ms. Trivedi; and that GEHC would make good faith efforts

to pursue permanent residency **(EXHIBIT 23)**for her, only to fall far short on this promise. What

is particularly frustrating is the fact that GEHC did get past the most difficult part of the green

card process—the US Department of Labor did certify a Labor Certification Application for her (

Immigration has approved Ms. Trivedi's petition as a person with exceptional ability/advanced

degree individual).

" **Federal Court cases have clearly faulted employers for this kind of inducement**

**and failure to use good faith in following up with this process. (EXHIBIT 23)**Also,

the company **neglected to file the PERM labor certification on timely manner**

**(despite Ms. Trivedi requesting) (EXHIBIT 12 ), which has resulted in that she**

**could not work for other employer(**preemptive**) in US**.

311.    Ms. Trivedi had emailed both ;Manager Dave Mehring and lead Nate Davis

mentioning this even before joining GEHC(EXHIBIT 21) .So, they are not letting

1   Ms. Trivedi go on with her own life. Knowing these matters from beginning.   Also by

2   cancelling H1  B so I can't proceed in arbitration or any other court.( preemptive)"

3   312.   **Breach of contract**

4

5   *See Leyden v. Am. Accreditation Healthcare Comm'n, 83 F. Supp. 3d 241, 247–*

6   *48 (D.D.C. 2015). In Leyden, the trial court held that the plaintiff had a valid claim*

7   *based on the employer's alleged violation of its internal anti-retaliation policy.*

8

9   *In Leyden, The defendant then terminated the plaintiff's employment. The*

10   *defendant moved to dismiss the complaint, arguing in relevant part that the anti-*

11   *retaliation policy did not create contractual rights. Even if it did, the defendant*

12   *contended, it had disclaimed any such rights in its employee handbook.* ***Court held that***

13   ***The anti-retaliation policy created an implied contract.*** *Strass v. Kaiser Foundation*

14   *Health Plan, a case holding that an employee handbook created an implied contract. Id.*

15   *at 247 (citing Strass v. Kaiser Found. Health Plan, 744 A.2d 1000 (D.C. 2000)). The*

16   *court discussed how a manual could create rights, and how an employer could effectively*

17   disclaim *those rights.   The court also rejected the defendant's argument about the*

18   *disclaimer, noting that a disclaimer that was "rationally at odds" with the other*

19   *language in the document may not cut off an implied contract.*

20

21   *In finding an implied contract, the court focused on the employer's invitation to*

22   *report "Improper Activities" internally and on the language of the anti-retaliation policy.*

23   *The court also concluded that the employer's disclaimer, which was found in a different*

24   *document, was rationally at odds with the anti-retaliation policy. .*

25

26

27

28

313.    Implied covenant of good faith and fair dealing to GE and plaintiff's implied

contract.

*Rely upon "breach of implied contract" or "promissory estoppel" theories to examine*

*handbook promises to enforce anti-retaliation promises found in GE corporate Codes, utilizing*

*the "handbook doctrine," an exception to the at-will rule for employer GE promises in employee*

*handbooks or manuals. Similarly, under a promissory estoppel theory, specific promises*

*within a handbook increase the likelihood that a court will find that the employee Trivedi*

*reasonably relied upon the statement.*

314.    As stated above; Trivedi and GE created contractual rights, Trivedi relied on anti-

retaliation promise in the GE policies letter (which had **GE anti-retaliation policy which**

**created an implied contract.)** she SIGNED as an condition of employment and followed duty

to report violations as expressed in GE policy, federal , state laws and rules, along with other

courses at GE that she was required to take as GE was in regulated environment.

315.    Madhuri Trivedi protected under the whistleblower protection policies in

corporate codes of ethics as she was following that.

316.    **GE violated/breached this code of ethics NYSE requirement by doing what**
        **they did to plaintiff Trivedi.**

317.    **GE's breach of an anti-retaliation policy in a Code of Ethics give rise to a**

**breach of contract claim.** *Federal district court held that an employer's anti-retaliation policy*

*created [1]legally enforceable rights.*

---

[1] https://www.zuckermanlaw.com/code-of-ethics-whistleblower-protection-lawyer/

1    318.    <u>As alleged above on several elements; GE breached contract.</u>

**TENTH CAUSE OF ACTION**

<u>31 U.S.C. §3729 et.seq. AND 31 U.S.C. § 3802 AND RELATED WHISTLEBLOWER</u>

<u>REPRISAL</u>

319.    Plaintiff Trivedi incorporates by reference paragraphs 1 to 318 above, as though fully set forth herein, as well as facts currently unknown.

320.    Plaintiff knows that plaintiff is required to file a FCA/Quitam lawsuit under SEAL with an attorney but since all these history, I have not been able to file it under seal; but am requesting whistleblower protection and reprisal relief under these laws.

321.    GE violated <u>FEDERAL FALSE CLAIMS ACT</u> ,31 U.S. Code § 3802 ; False claims and statements; Liability- to the actions of government contractor by failing to disclose product defects. General Electric is a government contractor.

322.    GE violated Civil False Claims Act (31 U.S.C. §3729 et seq.) by knowingly presenting false or fraudulent medical device SALES and service contract submitted to government, conspired to defraud the government. GE conspired and "knowingly" defrauded government because GE had actual knowledge of the information about InsiteEXC defects, design non conformances, performance issues, cyber security vulnerabilities and potential risks these vulnerabilities posed to insider attacks as well as attacks from outside network that could affect/affect patients possible diagnosis of Imaging scan, and much more unspecified attack vector, acted in deliberate ignorance of the truth, falsified of the InsiteEXC information ; continuously selling and integrating InsiteEXC of all kinds of GE medical devices for years to

1  generate revenue and earn millions worth of medical device purchases and service contracts by

2  government. As per 31 U.S.C. §3729 et seq. Plaintiff Trivedi claims here in -Not proof of

3  specific intent of GE to defraud is required .

4

5      323.   Plaintiff  Trivedi engaged in protected activity; GE had knowledge that Plaintiff

6  Trivedi was engaged in protected activity; GE took an action that had a negative effect on the

7  terms, conditions, or privileges of employment, such as termination,  harassment and any other

8  act that would dissuade a reasonable person from reporting violations of the <u>False Claims Act</u>;

9  and GE retaliated against Plaintiff  Trivedi because of this conduct.

10

11

12      **324.   Plaintiff has alleged properly all the elements as stated above in this**

13      **complaint.**

14      325.   Further stopping me from pursing Quitam and/or any other claims by cancelling

15  my immigration H1B. Because quitam attorneys said that given Trivedi's immigration situation

16  they were hesitant to invest million in the quitam lawsuit if they take on contingency basis.

17

18

19                    **ELEVENTH CAUSE OF ACTION**

20          <u>**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**</u>

21

22      326.   Plaintiff Trivedi incorporates by reference paragraphs 1 to 325 above, as though

23      fully set forth herein, as well as facts currently unknown.

24      327.   Plaintiff alleges that Plaintiff's termination was wrongful because it was in

25  Violations of the public policy of the United States in that Plaintiff's termination was in

26  retaliation for Plaintiff's opposing and reporting illegal activity, as described in preceding

27

28

Page - **98** -of **103** COMPLAINT                        Madhuri Trivedi

1    allegations for -----Under the public-policy an employee is wrongfully discharged when the

2    termination is against an explicit, well-established public policy.

3
     328.    A substantial motivating reason for Trivedi's termination was her reporting to
4
     GE's management, managers, seniors, its General manager Dave Elario(who threatened to take
5
     Trivedi off job and already did later)  its CTO, its CEO, its CFO
6
7    329.    Trivedi refused to participate in GE's attempts to turn a blind eye to, and indeed

8    affirmatively  and knowingly cover up , CFPA-consumer finance protection act, HIPPA,

9
     HITECH, Sarbanes-Oxley, and other violations of federal securities laws, False claims act, and
10
     Trivedi took a position adverse to GE regarding such illegal activity.
11
12   330.    Wrongful discharge tort also protects employees who disclose a violation of

13          "public policy"

14

15                        **TWELFTH CAUSE OF ACTION**
16
     **18 U.S.C § 1512 et. Seq. - TAMPERING WITH A WITNESS, VICTIM, OR AN**
17
     **INFORMANT, 18 U.S.C § 1513 et.seq. - RETALIATING AGAINST A WITNESS,**
18
19                   **VICTIM, OR AN INFORMANT  (E)**

20
     331.    Plaintiff Trivedi incorporates by reference paragraphs 1 to 330 above, as though
21
22          fully set forth herein, as well as facts currently unknown.

23   332.    GE knew that FBI said that GE matter was quitam matter, and that FDA gave a

24   letter in Feb 2014, another FDA letter from Director of radiological devices; Mary Patel

25   (EXHIBIT 19),OSHA but despite continue jeopardize my livelihood by jeopardizing my

26
     immigration and further stopping me from pursing claims, work with /go to government
27
     agencies, work on government investigations.
28

**RELIEF**

333.   I pray to court and Judge to take this complaint's allegations as a whole, Look at all these matter and allegations holistically, humanly and give JUSTICE– and give all the relief , to make me whole.

334.   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

335.   For monetary damages against Defendants, and each of them, in an amount sufficient to compensate Plaintiff for loss of income, loss of benefits, loss of use, for emotional distress, and for the injury and damage that Defendants have caused to Plaintiff's name and reputation;

336.   Front pay-all the salary she lost since she was illegally terminated.

337.   double back pay damages for all violations;

338.   Restore and Resolve immigration petition, benefits and her prior employment based visa that she lost and do that backdated to day she was terminated.

339.   For punitive damages against Defendants in an amount sufficient to deter them from engaging in similar misconduct toward other employees, and to make an example of them to others who may otherwise be inclined to engage in such wrongful conduct;

340.   Monetary damages as per Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

341.   Monetary damages as per SOX, and other cause of actions mentioned above.

342.   Plaintiff's reasonable legal cost and fees,

343.   For injunctive relief, as the Court may deem proper.

344.   For such other, further relief, as the Court may deem proper.

1

Dated: May 20th, 2019

2

3

*mjt*

4

5

_____,

Madhuri Trivedi

6

Founder, CEO,CTO of Startup -Orange ,
ATTN: Women Who Code

7

44 Tehama St, 5th Floor, San Francisco, CA 94105
Fax: 708-778-4859 Phone: (650) 242-5135

8

Email: entreprenuerm@protonmail.com

9

Linkedin:- linkedin.com/in/trivedim

10

11

**EXHIBITS**

12

1.  A.  GE Medical Devices Vulnerability _ The Department of Homeland Security

13

(DHS)_ICS-CERT ALERT DATED March 2018.

14

1.  B.  Detail of alert with INSITE EXC (one of many alert)

15

16

GE Medical Devices Vulnerability _ The Department of Homeland Security (DHS)_ICS-

17

CERT ALERT –

18

2.  My email to GE CEO, GE board of directors and others.

19

3.  GE board of director inquiry

20

4.  Arbitration complaint against GE

21

5.  Letter from FDA,

22

6.  OSHA complaint ( included Exhibit 3- Arbitration complaint against GE , Exhibit 5a-

23

24

FDA letter, Exhibit 7 below; and other documents along with phone chat, emails.

25

7.  OSHA complaint attachment 1 summary ,OSHA complaint attachment 2 InsiteEXC

26

defects and other violations)

27

8.  OSHA Response

28

Page - **101** -of **103** COMPLAINT                    Madhuri Trivedi

9. Insite Production issue and Insite 400 critical defects powerpoint

10. Madhuri Trivedi Performance appraisal

11. GE immigration attorney and HR email that GE canceled my H1 B visa while mediation and arbitration is PENDING. And won't pursue any immigration I 140 paperwork.

12. Immigration attorney Jeff letter to GE healthcare global service CEO

13. Mediation statement by CROSS law firm

14. Despres, Schwartz and Geoghegan, Ltd. Attorney Mike Persson pre arbitration brief

15. Foley and Mansfield national law firm letter to GE

16. Bill Barbiux deposition highlights

17. Deceptive, with omission, concealing defects;

   "InsiteEXC "product manual, sales and marketing brochures for all kinds of devices

   ultrasound, surgery, Lunar and more;

   press releases, news coverage

18. GEHC CTO Mike Harsh email to all employees about GENDER speak in technology.

19. FDA director Pastel Marry letter-FCA

20. Approved LCA from DOL for GE/GE transportation H1B related

21. Trivedi's email communication with manager Dave and Nate  before joining GEHC about filing PERM 365 before H1 B expires

22. GE manager Dave Sallis in my performance review writing that it is GE's problem

23. Permanent residency introduction letter –immigration attorney

24. Arbitration subpoena to GEHC CEO, CTO, general manager, architect, manager, engineer and other

25. Email to lead designer at GE Gregg Stratton about being retaliated for cybersecurity, quality issues

26. 1000 page test document

27. David –GE manager perjury , engineers never used database performance tuning tool of $30 and Trivedi had to fight to get it.

28. GE job offer to Trivedi-conditioned to signing and following GE policies-"The Spirit and the Letter"

29. SIGNED GE job offer –acknowledgement-conditions of employment - GE policies-"The Spirit and the Letter",

30. InsiteEXC security- **"Enable memory protection to help mitigate online attacks"** **which was required to be unchecked in settings in order to establish/install remote** **connectivity.**